**Grosvenor BURNETT et al., Appellants,**

v.

**Lt. General John J. TOLSON, Commanding General of Fort Bragg, North Carolina, and Stanley R. Resor, as Secretary of the Army, Appellees.**

**No. 72–1545.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 2, 1972.

Decided Feb. 21, 1973.

---

3. While, of course, it is difficult to prove such a difference absent the original notes, it is not impossible. Other evidence such as a stenographer's recollections can be adduced. E. g., United States v. Lonardo, 350 F.2d 523 (6th Cir. 1965). The courts have, in effect, given law enforcement agents a little leeway to destroy immaterial matter. But cf. Lee v. United States, 125 U.S.App.D.C. 126, 368 F.2d 834, 837–838 (1966) (even good faith destruction of records coupled with deliberate delay between offense and arrest violated Jencks Act).

Widener, Circuit Judge, dissented and filed opinion.

Prof. Walter E. Dellinger, III, Durham, N. C. (Charles F. Lambeth, Jr., Thomasville, N. C., on brief), for appellants.

F. Stuart Clarke, Asst. U. S. Atty. (Warren H. Coolidge, U. S. Atty., on brief), for appellees.

Before CRAVEN, RUSSELL and WIDENER, Circuit Judges.

CRAVEN, Circuit Judge:

Appellant Burnett and other members of an antiwar organization brought a class action in district court to enjoin the Commanding General of Fort Bragg Military Reservation from prohibiting distribution of certain leaflets on the base. Jurisdiction was alleged under 28 U.S.C. §§ 1331 and 1361. The district

court dismissed the suit for lack of jurisdiction, holding that Burnett *et al* could not establish the $10,000 jurisdictional minimum required by § 1331 and that this was not an appropriate case for mandamus under § 1361. We reverse.

Burnett and other leaders of the United Citizens for Peace, a group seeking to bring about an end to the conflict in Vietnam, had previously sought permission from officials at Fort Bragg, North Carolina, to distribute various handbills in the *public* areas of the base. Burnett submitted two written requests for permission, together with sample leaflets, to the office of the Provost Marshal. These requests were denied after a determination by Lieutenant General John J. Tolson, pursuant to Fort Bragg Regulations Nos. 210–23 [1] and 210–10,[2] that distribution of the leaflets would constitute a "clear danger to the military loyalty, discipline, and morale of military personnel at Fort Bragg."

The Complaint is grounded upon the first amendment and alleges an arbitrary denial of the fundamental first amendment right of speech and expression. It is urged upon us that we should ignore the $10,000 requirement contained in 28 U.S.C. § 1331 or judicially notice that freedom of speech is of great price and value sufficient to come within the pecuniary limitations of the statute. Much has been written on the subject,[3] including, notably, Judge Medina's expression of regret at what he considered to be an unfortunate gap in federal jurisdiction, Wolff v. Selective Service System, 372 F.2d 817, 826 (2d Cir. 1967), and Chief Judge Lumbard's forecast that if the "case of a poor man who stands to lose nothing but his most precious personal liberties [by the] unconstitutional actions of the federal government" should ever come before the federal courts, the "old rule requiring the claimed deprivation be capable of monetary valuation would [not] long endure." Fein v. Selective Service System, 430 F.2d 376, 385 (2d Cir. 1970) (Lumbard, C. J., dissenting).

Since we are persuaded that there is jurisdiction in the district court under 28 U.S.C. § 1361, we need not decide these questions, but we note that the last mention of the subject by the Supreme Court in Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113,

1. Fort Bragg Regulation No. 210–23 provides as follows:
   1. *Purpose.* The purpose of this directive is to establish policies for the control of the distribution of publications on this post.
   2. *General Policy.*
   a. The distribution of publications, including pamphlets, newspapers, magazines, handbills, flyers and other printed material on the Fort Bragg Military Reservation will not be made except through regularly established distribution outlets, under appropriate contractual agreements, or as required by law or regulation.
   b. The Installation Commander may grant exceptions to the policy contained in this paragraph. Applications for exceptions shall be submitted in writing to the Provost Marshal, this headquarters, at least seven days prior to the date of the proposed distribution describing the method of distribution proposed and including a copy of the publication or publications involved.
   3. Reference: AR 210–10.

2. Fort Bragg Regulation No. 210–10, ¶ 5–5, ¶ c provides as follows:
   If it appears that the dissemination of a publication presents a clear danger to the loyalty, discipline, or morale of troops at this installation, the installation commander may without prior approval of higher headquarters, delay the distribution of any publication which he considers undesirable, on property subject to his control.

3. See Cortright v. Resor, 325 F.Supp. 797, 809 (E.D.N.Y.1971), for a good collection of this literature. *E. g.*, Note, Judicial Review of Military Surveillance of Civilians: Big Brother Wears Modern Army Green, 72 Colum.L.Rev. 1009, 1014–1018 (1972). We note that an act is now before Congress to abolish the $10,000 requirement in actions based upon a federally created right. Hearings on S. 1876 Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary, 92d Cong., 1st Sess., pt. 1, at 1 (1971).

31 L.Ed.2d 424, 432 (1972), is not favorable to Burnett's contentions.[4]

## 28 U.S.C. § 1361

Burnett places his alternative jurisdictional argument upon the federal mandamus provision, 28 U.S.C. § 1361, which provides:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

Mandamus is an ancient remedy, said to lie only to compel the fulfillment of a duty which is ministerial, plainly and positively ascertained, and free of doubt. Prairie Band of Pottawatomie Tribe of Indians v. Udall, 355 F.2d 364, 367 (10th Cir. 1966). These traditional requirements for invoking federal mandamus were concisely stated by the Fifth Circuit in Carter v. Seamans, 411 F.2d 767 (5th Cir. 1969), at 773:

> Generally speaking, before the writ of mandamus may properly issue three elements must coexist: (1) a clear right in the plaintiff to the relief sought; (2) a clear duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available.

Whether the purview of the common law writ of mandamus was broadened by the inclusion of the words "in the nature of" before the word "mandamus" in § 1361,[5] or whether Congress meant only to make the writ available as at common law,[6] we need not decide. For we think that however narrowly viewed mandamus may be, the allegations of the Complaint are sufficient to confer jurisdiction upon the district court.

*Where military reservations are open to the public* it is now clear that civilians have an unqualified right to enter such *public* areas and to exercise their constitutionally protected freedom of expression in these areas. Flower v. United States, 407 U.S. 197, 198–199, 92 S.Ct. 1842, 32 L.Ed.2d 653 (1972). In areas of a base open to the public,

> the military has abandoned any claim that it has special interests in who walks, talks, or leaflets on the avenue. The base commandant can no more order petitioner off of this public street because he was distributing leaflets than could the city police order any leafleteer off of any public street. . . . "[S]treets are natural and proper places for the dissemination of information and opinion." . . . "[O]ne who is rightfully on a street which the state has left open to the public carries with him there as elsewhere the constitutional right to express his views in an orderly fashion." [citations omitted].

*Id.*

The Third Circuit recently characterized the *Flower* decision in Spock v. David, 469 F.2d 1047 (3d Cir. 1972).

> [T]he [Supreme] Court made clear that the power of military authorities

---

4. *But see* Spock v. David, 469 F.2d 1047 (3d Cir. 1972). Recent decisions on this subject conflict. For cases denying jurisdiction under § 1331 *see, e. g.*, Goldsmith v. Sutherland, 426 F.2d 1395 (6th Cir. 1970); Giancana v. Johnson, 335 F.2d 366 (7th Cir. 1964). For cases upholding jurisdiction see, *e. g.*, Fifth Ave. Peace Parade Comm. v. Hoover, 327 F.Supp. 238 (S.D.N.Y.1971); Cortright v. Resor, 325 F.Supp. 797 (E.D.N.Y.1971); Murray v. Vaughn, 300 F.Supp. 688 (D. R.I.1969). *See* Note, Judicial Review of Military Surveillance of Civilians: Big Brother Wears Modern Army Green, 72 Colum.L.Rev. 1009, 1019–1022, 1051–1054 (1972).

5. *E. g.*, Carey v. Local Board No. 2, Hartford, Conn., 297 F.Supp. 252, n. 3 (D.Conn.), aff'd, 412 F.2d 71 (2d Cir. 1969). *See generally* 3 K. Davis, Administrative Law Treatise § 23.09 (Supp. 1965). When Congress was considering the enactment of 28 U.S.C. § 1361, it was the recommendation of the Department of Justice that the statute include the word "ministerial" before the word duty. The suggestion was not accepted by Congress. The omission may be significant.

6. *E. g.*, Massachusetts v. Connor, 248 F. Supp. 656, 659 (D.Mass.), aff'd, 366 F.2d 778 (1st Cir. 1966).

to restrict general access to a military facility . . . did not apply to those parts of the facility to which the public has been freely admitted.

. . . . . .

The Federal Government exercises jurisdiction over the entire reservation [Fort Dix]. Its military policemen enforce traffic regulations and the criminal laws applicable to offenses on federal military reservations. But the fact of the exercise of such jurisdiction does not imply the power to selectively exclude persons solely on the *ground of exercise of rights* protected by the first amendment. If the reservation is open to all the rest of the public, there is no basis for holding that it may be closed, selectively, to political candidates or to distributors of unapproved literature.

Taking the allegations of the Complaint to be true, as we must on appeal from the granting of a motion to dismiss, it appears that Burnett and his class sought only to distribute handbills at places on the military reservation *open to the public*. It further appears that members of the civilian public are allowed to frequent certain areas of Fort Bragg without any restriction, and that these areas include the shopping center, the post exchange, the post office, and the motion picture theater. Indeed, we have previously had occasion to note that there are areas of Fort Bragg "completely open and unrestricted." United States v. Bradley, 418 F.2d 688, 689 (4th Cir. 1969); Yahr v. Resor, 431 F.2d 690 (4th Cir. 1970). The allegations of the Complaint, therefore, establish a clear right in Burnett and his class to enter the public areas of Fort Bragg as leafleteers.[7]

Plaintiffs have not sought access to restricted areas nor have they threatened to enter them without permission. There has not been interference with the use of "public" streets or sidewalks, and none is intended by Burnett and his class. Despite assurances by Burnett that distribution in public areas will be accomplished in such a manner as not to interfere with or disrupt military functions and activities, and that a distributing group of persons will not exceed five in number, the base commander, according to the Complaint, refused permission to distribute leaflets while arbitrarily and discriminatingly permitting others to make like distributions.

The government urges that mandamus will not lie here since the duty Burnett seeks to have fulfilled is not "ministerial."[8] It is argued that Regulation

---

7. On remand it will be for the district court, of course, to determine what areas of Fort Bragg are open to the public in the *Flower* sense. Our recitation of the allegations of the complaint is that only.

8. To accept the government's contention that General Tolson's duty here was "discretionary" rather than "ministerial" does not necessarily resolve the question of the availability of mandamus. It is not easy to tell what the cases mean. For example, in Cortright v. Resor, 325 F. Supp. 797 (E.D.N.Y.1971), the government did not even challenge the district judge's holding that there was mandamus jurisdiction under 28 U.S.C. § 1361 to review the order of the commanding general transferring soldiers to different stations—certainly a matter ordinarily within his discretion. Again, the Second Circuit, in United States ex rel Schonbrun v. Commanding Officer, 403 F.2d 371, 374 (2d Cir. 1968), recognized that although mandamus jurisdiction was not available to direct the exercise of discretion, "official conduct may have gone so far beyond any rational exercise of discretion as to call for mandamus even when the action is within the letter of the authority granted." In Feliciano v. Laird, 426 F.2d 424 (2d Cir. 1970), it was held that the failure of the Army to follow its own regulations was enough to support the writ of mandamus and that the disapproval of an application for a hardship discharge was arbitrary and irrational rather than within the discretion of the military authority. In Nixon v. Secretary of Navy, 422 F.2d 934, 939 (2d Cir. 1970), it was said as to the military, "there are certain limitations to this 'hands-off' policy, and official military conduct may go so far beyond the limits

No. 210–10 vests the Commanding General with "discretion"—*i.e.*, whether to allow Burnett and his class to enter the public areas of the base and distribute leaflets, it is asserted, is within the sound discretion of the commander. We disagree, and on the authority of *Flower, supra*, we hold that General Tolson is under a duty to allow the orderly expression of views in areas of Fort Bragg generally open to the public.

■ While we think the ministerial-discretionary dichotomy is not very helpful in analysis of the limitations on statutory mandamus, we are not presently confronted with a situation in which discretion is even involved. No officer of the United States, not even a base commander, may exercise his "discretion" to prevent leafletting in areas generally open to the public, *Flower, supra*, 407 U.S. at 198, 92 S.Ct. 1842, and certainly he may not pick and choose expressions of viewpoints that may be disseminated in such areas. United States v. Crowthers, 456 F.2d 1074, 1078 (4th Cir. 1972). Where the area of the base involved is one *open to the public*, the base commander has no discretion, but instead a ministerial duty to allow peaceful leafletting regardless of the views sought to be expressed.

■■ The base commander may, of course, prohibit *all* distribution of handbills, leaflets, and fliers within areas of a military base that are *not* open to the general public. Also, he may enforce cosmetic regulations, even in places open to the public, so as to prohibit broadcasting or throwing away handbills and to require that discarded material be placed in receptacles. In short, the government may enforce reasonable regulations to prevent littering. What it may not do is to "favor one pamphlet and reject another because the latter displeases the official in charge" in areas that are open to the public. *Crowthers, supra*, at 1081.

Because we think there is (1) a clear right in the plaintiff to the relief sought, and (2) a clear duty on the part of the defendant to permit the activity sought, we now consider whether the third requirement of traditional mandamus is present: that there is no other adequate remedy available. *See Carter, supra*, 411 F.2d at 773.

■ We have previously expressed our doubt that there is jurisdiction under 28 U.S.C. § 1331 because of the difficulty with jurisdictional amount. We are unaware of any other statutory authority for supporting jurisdiction in

of what may be considered a rational exercise of discretion as to call for mandamus."

Long before the enactment of the present statute, Chief Justice Taft spoke to the ministerial-discretionary dichotomy:

Mandamus issues to compel an officer to perform a purely ministerial duty. It cannot be used to compel or control a duty in the discharge of which by law he is given discretion. The duty may be discretionary within limits. He cannot transgress those limits, and if he does so, he may be controlled by injunction or mandamus to keep within them. The power of the court to intervene, if at all, thus depends upon what statutory discretion he has.

Work v. United States ex rel. Rives, 267 U.S. 175, 177, 45 S.Ct. 252, 69 L.Ed. 561 (1925).

Compare the excerpt from Bivens v. Six Unknown Named Agents of the Fed. Bur. of Narc., 409 F.2d 718, 723, (2d Cir. 1969), rev'd on other grounds, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971):

Few more unseemly sights for a democratic country operating under a system of limited governmental power can be imagined than the specter of its courts standing powerless to prevent a clear transgression by the government of a constitutional right of a person with standing to assert it.

*See also:* Dash v. Commanding General, 307 F.Supp. 849 (D.S.C.1969), aff'd, 429 F.2d 427 (4th Cir. 1970) (mandamus jurisdiction apparently assumed) ; Chase v. Robson, 435 F.2d 1059 (7th Cir. 1970) (mandamus available against a district judge to prevent prior restraint of first amendment freedom of speech) ; Yahr v. Resor, 431 F.2d 690 (4th Cir. 1970) (mandamus jurisdiction apparently assumed) ; Murray v. Vaughn, 300 F.Supp. 688 (D.R.I.1969).

the district court, and none has been suggested to us. That there might possibly be a "back door" entry into the federal court is not, we think, an available adequate remedy. In *Spock, supra,* 469 F.2d at 1051 it was suggested that the commander of the Fort Dix Military Reservation

. . . could have been sued in the state courts of New Jersey. He would undoubtedly have removed to the federal courts pursuant to 28 U.S.C. § 1442(a)(1), since the suit is for acts which were done under color of his federal office. In the removed action the jurisdictional amount requirement would have been inapplicable because § 1442 is a separate jurisdictional grant without regard to amount in controversy . . . .

We think it clear that assuming such a route to the federal court is available, it is not an adequate remedy within the meaning of the mandamus rule, for it rests not upon the volition of the plaintiffs but upon the decision of the government to seek removal.[9]

▅▅ We hold that on the allegations of the Complaint in this case there is jurisdiction in the District Court under 28 U.S.C. § 1361 to try the case and to thereupon consider whether or not the plaintiffs may be entitled to a Writ of Mandamus, or an injunction, or a declaratory judgment,[10] establishing their right to their freedom of expression in areas of Fort Bragg that are open to the general public. If the district court should determine that plaintiffs are entitled to relief it may, of course, confine relief to the allowing of leafletting at appropriate times and places so as to assure that the activity will be peaceful and will not disrupt the organization and operation of the military establishment.

Reversed.

WIDENER, Circuit Judge (dissenting):

I must respectfully dissent.

On December 5, 1969 and December 18, 1969, plaintiffs, The Fort Bragg Leafletting Committee of the United Citizens for Peace, submitted identical requests to the Provost Marshal's Office of Fort Bragg requesting permission "to distribute the attached leaflet" respectively on December 13, 1969 and January 30 or 31, 1970. The request stated "Distribution will be in public areas on a postwide basis, and will be accomplished in such a manner as not to interfere with or disrupt military functions and activities." Plaintiffs stated in their application they would accomplish "proper police and cleanliness." The leaflet contained remarks which, at least, must be considered uncomplimentary to the Army command and could not have helped troop morale. Among other things, the Commanding General was "of the opinion that each of the two proffered publications had as their only possible goals the undermining of military loyalty, discipline, and morale at Fort Bragg."

In this setting, the Provost Marshal denied the requests on December 10 and December 23, 1969.

On January 2, 1970, plaintiffs sued the Commanding General and the Secretary of the Army, claiming jurisdiction under 28 U.S.C. §§ 1341, 1343, 1346 and 1361, and 42 U.S.C. § 1983, and the First and Fifth Amendments to the Constitution. The matter in controversy, exclusive of interest, was alleged to exceed the value of $10,000. The com-

---

9. It is far from certain that such a suit could be maintained in a state court. *See e. g.,* Alabama v. Rogers, 187 F.Supp. 848 (M.D.Ala.), aff'd mem., 285 F.2d 430 (5th Cir. 1961). *See also* Arnold, The Power of State Courts to Enjoin Federal Officers, 73 Yale L.J. 1385 (1964); Warren, Federal and State Court Interference, 43 Harv.L.Rev. 345 (1930).

10. Mandamus jurisdiction under 28 U.S.C. § 1361 permits flexibility in remedy. Davis, *supra* note 5.

plaint stated the action is brought "For a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2203, and for a preliminary and permanent injunction." The prayer of the complaint prayed for a declaratory judgment pursuant to 28 U.S.C. § 2201, declaring the Fort Bragg regulations concerning distribution of literature to be unconstitutional; for an order declaring the plaintiffs to be constitutionally entitled to distribute leaflets "On those areas of Fort Bragg open to the public in the manner specified in the written requests;" and for a preliminary and permanent injunction enjoining the defendants from prohibiting the plaintiffs "from a peaceful distribution of leaflets to willing takers on those areas of Fort Bragg open to the public." It is quite noteworthy that nowhere did the plaintiffs pray that the refused permit issue.

The defendants filed an answer which included motions to dismiss for lack of jurisdiction and failure to state a claim. They also filed an affidavit of the Commanding General at Fort Bragg explaining in some detail his reasons for refusing to issue the permit, the conclusions of which have been copied above.

The situation stood here when the district court granted the motion to dismiss on March 9, 1972 because it lacked jurisdiction over the subject matter under 28 U.S.C. §§ 1331 and 1361. The plaintiffs appealed.

28 U.S.C. § 1331(a), provides:

"The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

28 U.S.C. § 1361, provides:

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

JURISDICTION UNDER § 1331(a)

The holding of the majority is that "We hold that on the allegations of the Complaint in this case there is jurisdiction in the District Court under 28 U.S. C. § 1361 to try the case and to thereupon consider whether or not the plaintiffs may be entitled to a Writ of Mandamus, or an injunction, or a declaratory judgment." A footnote indicates that mandamus jurisdiction permits a flexibility in remedy.

Insofar as injunctive or declaratory relief is concerned, the most recent expression of the Supreme Court is that in Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), where the court said:

". . . in suits against federal officials for alleged deprivation of constitutional rights, it is necessary to satisfy the amount in controversy requirement for federal jurisdiction." 405 U.S. 538, 547, 92 S.Ct. 1113, 1119.

Although the majority opinion here notes that Lynch is "not favorable to . . . [plaintiffs'] contentions," the holding is in direct contradiction to the expressed command of Lynch insofar as injunctive and declaratory relief is concerned. The majority opinion here overlooks the fact that conflicts between the various circuits have been settled by Lynch, as it does a very recent decision of this court, McGaw v. Farrow, 472 F. 2d 952 (4th Cir. 1973), in which we held in a remarkably similar fact situation (a chapel) arising at Fort Eustis:

"There seems little doubt that this conclusion denying jurisdiction under Section 1331 was sound. Though a few decisions have held contrariwise, a like conclusion has been reached in a majority of decisions of Circuit Courts of Appeals. Whatever differences there may have previously been in these decisions would appear, however, to have been set at rest by the recent decision in Lynch. . . ." Id., at 954.

The opinion further holds that claims, such as the ones in McGaw and in the

instant case, ". . . not measurable in 'dollars and cents' fail[s] to meet the jurisdictional test of amount-in controversy." *Id.*, at 954.

By refusing to use the measuring stick of *Lynch,* as construed by *McGaw* in this circuit less than a month ago, the majority, by invoking jurisdiction under 28 U.S.C. § 1361, actually will have the district court consider whether to give injunctive or declaratory relief under § 1331(a), which is expressly prohibited by *Lynch* and *McGaw* unless the amount in controversy test may be met.

### JURISDICTION UNDER 28 U.S.C. § 1361

If my premise is correct that the district court was without jurisdiction under § 1331(a), the only avenue for relief for plaintiffs is by way of action "in the nature of mandamus" under § 1361.

The panel properly sets out three elements which must be met before mandamus may issue:

1. A clear right in the plaintiff to the relief sought.

2. A clear duty on the part of the defendant to do the act in question.

3. No other adequate remedy available.

These three elements must coexist. The existence of one is not sufficient, as the majority notes.

My principal objection to the reversal of the district court on this ground is that neither is there a clear right in the plaintiffs to the relief sought, nor is there a clear duty on the part of the defendants to do the act in question. The act in question, of course, is to issue the permit to distribute the leaflets, although such was not prayed for in the complaint.

When plaintiffs filed their suit, they modified the request which had been made to the Provost Marshal. The request which had been made to the Provost Marshal was to distribute the leaflets "in public areas on a postwide basis." The complaint, in paragraph 5, mentions distribution of the leaflets "on the public areas of Fort Bragg." It later, in paragraph 8, states that plaintiffs intend to confine their activities to "these public areas, which include the shopping center, the post exchange, the post office, and the motion picture theatre," and that "members of the Civilian Public circulate in these areas of Fort Bragg without restrictions and of course are free to converse with off-duty servicemen."

It thus appears that the permission sought in the request and the permission sought in the complaint are somewhat different. The generally accepted definition of public places, which I equate with public areas, is a place at which people assemble or to which they commonly resort for the purpose of business, amusement, recreation, or other lawful purpose. See 35 Words and Phrases, p. 433, et seq., and cases there cited. Of course, this would include banks, stores, theatres, dispensaries, hospitals, apartment and housing complexes, athletic fields, and all the thousand and one areas in which servicemen and their families live in which the Commanding General had allowed civilians to circulate in an effort to make military life somewhat less onerous for the numbers of servicemen stationed at Fort Bragg. We have here a case of all "public areas" in Fort Bragg, not only streets, sidewalks, and parks which have been historically associated with First Amendment rights. See Lloyd Corp. v. Tanner, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972).

At the time the request was refused by the Provost Marshal, the applicable law with relation to the Post Commander's obligation was stated in Cafeteria Workers v. McElroy, 367 U.S. 886, 81 S. Ct. 1743, 6 L.Ed.2d 1230 (1961) as follows:

"It is well settled that a Post Commander can, under the authority conferred on him by statutes and regulations, *in his discretion,* exclude private persons and property therefrom, or admit them under such restrictions as he may prescribe in the interest of

good order and military discipline." [Emphasis added] 367 U.S. 886, 893, 81 S.Ct. 1743, 1748.

At the point, then, when the Provost Marshal denied the requests, in view of the affidavit submitted by the Commanding General, it was in his discretion whether or not to exclude the leafleteers from the base, it being obvious from the affidavit that in the opinion of the Commanding General such exclusion was necessary in the interest of good order and military discipline. The same state of law appertained at the time the district court dismissed the complaint March 9, 1972.

On June 12, 1972, the Supreme Court decided Flower v. United States, 407 U.S. 197, 92 S.Ct. 1842, 32 L.Ed.2d 653. *Flower* decided that a *street* on Fort Sam Houston was a place upon which a base Commander could not prohibit distribution of literature without a permit. The court said:

> "The base commandant can no more order petitioner off of this public street because he was distributing leaflets than could the city police order any leafleteer off of any public street. . . . '[S]treets are natural and proper places for the dissemination of information and opinion.' . . . '[O]ne who is rightfully on a street which the state has left open to the public carries with him there as elsewhere the constitutional right to express his views in an orderly fashion.'" 407 U.S. 197, 198, 92 S.Ct. 1842, 1843.

The rationale of thus excluding streets from the rule of Cafeteria Workers v. McElroy was:

> "Under such circumstances the military has abandoned any claim that it has special interests in who walks, talks, or distributes leaflets on the avenue." 407 U.S. 197, 198, 92 S.Ct. 1842, 1843.

The court did not exempt from the operation of the rule in Cafeteria Workers v. McElroy all places on a military base where civilians may circulate without restriction but only those places to which "the military has abandoned any claim that it has special interests in. . . ." 407 U.S. 197, 198, 92 S.Ct. 1842, 1843. The mere fact that the civilian public may circulate freely in some areas of Fort Bragg without restriction is no indication that the military has abandoned any claim to a special interest in such areas. The requests made and turned down by the Provost Marshal were much broader than the streets of Fort Bragg, or the areas of Fort Bragg in which the military had abandoned any special interest, as indeed was the complaint filed. Under such circumstances, at the time the request was made and at the time of the dismissal by the district court, the Commanding General was acting well within his discretionary authority in declining to issue the permit. Even under *Flower,* the request and the complaint seek permission to distribute leaflets in a much broader area than the narrow exception annunciated by *Flower.* In such a case, the discretion which should be exercised in the first instance should be that of the Commanding General and not that of the district court.

In United States v. Wilbur, 283 U.S. 414, 51 S.Ct. 502, 75 L.Ed. 1148 (1931), the court stated that mandamus will issue ". . . only where the duty to be performed is ministerial and the obligation to act peremptory and plainly defined. The law must not only authorize the demanded action, but require it; the duty must be clear and indisputable." 283 U.S. 414, 420, 51 S.Ct. 502, 504.

In discussing what acts are ministerial and therefore subject to mandamus, the court said in Wilbur v. United States, 281 U.S. 206, 218, 50 S.Ct. 320, 324, 74 L.Ed. 809 (1930):

> "Where the duty in a particular situation is so plainly prescribed as to be free from doubt and equivalent to a positive command it is regarded as being so far ministerial that its performance may be compelled by mandamus, unless there be provision or implication to the contrary. But

where the duty is not thus plainly prescribed, but depends upon a statute or statutes the construction or application of which is not free from doubt, it is regarded as involving the character of judgment or discretion which cannot be controlled by mandamus." [Footnotes omitted] 281 U.S. at 218, 50 S.Ct. at 324.

Neither the request, then, nor the complaint states a case in the light of Cafeteria Workers v. McElroy as modified by *Flower*. The duty of the Commanding General to issue the permit is neither clear nor indisputable. Indeed, considering the broad scope of the application, declining to issue the permit was well within his discretionary authority.

Should plaintiffs' application have been framed so as to place it within the narrow confines of *Flower*, perhaps we should have had another case, but there is no non-discretionary obligation on the part of the Commanding General to issue a permit when the permission sought is broader than that required by *Flower*, as was the case here. Neither was there any obligation on the part of the district court to fashion equitable relief upon an application for mandamus; indeed, it had no jurisdiction to so act in the premises. Mandamus commands a public official to perform his ministerial, non-discretionary duty. If the permit sought were within the duty prescribed, the Commanding General might have had an obligation to issue it. Since the permit sought was broader than the Commanding General's non-discretionary obligation, the district court may not substitute its discretion for the Commanding General's and assume equitable or declaratory jurisdiction of the matter contrary to the express commands of *Lynch* and *McGaw*.

Had this case been treated as a simple remand reciting the fact that *Flower* was not available to the district judge at the time of his decision, and requiring him to reconsider in the light of *Flower* should plaintiffs wish to amend their request, many of my reservations might be removed. I doubt we would hear of the matter again. The broad overtones of the majority opinion, however, and, indeed, its express command, as it directs consideration of injunctive and declaratory relief, in the face of, and contrary to, *Lynch* and *McGaw*, under the guise of mandamus jurisdiction, make it necessary that I express my views.

This is a clear case of federal courts extending the jurisdiction conferred on them by Congress. See *McGaw*, 472 F. 2d at 954–957, for an excellent analysis of the question.