Joseph ETHERIDGE, Jr., et al.

v.

James R. SCHLESINGER, Secretary of
Defense, et al.

Civ. A. No. 126–73–R.

United States District Court,
E. D. Virginia, Richmond Division.

July 18, 1973.

T. David Thelen, Richmond, Va., for plaintiffs.

David G. Lowe, Asst. U. S. Atty., Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Five active members of the Naval Reserves and Naval Air Reserves originally brought this action seeking an order enjoining the defendants from enforcing challenged Navy grooming regulations and from calling plaintiffs to active duty for alleged violations of said regulations.

On March 20, 1973 plaintiffs moved the Court, Judge Kellam presiding, to issue a temporary restraining order and said motion was denied. A motion for a preliminary injunction was also denied by Judge Kellam on March 27, 1973. Subsequent to these hearings plaintiff Etheridge was called to active duty for three weeks and so served. He is presently on reserve status again and may be called again to active duty for unsatisfactory performances at drill in one year. Plaintiff Holder was recalled to active duty for 20 months, but said orders have been held in abeyance pending this action. Plaintiff Jordon was called to active duty on April 11, 1973 and is now so engaged for a contemplated period of 20 months. Plaintiffs Pugh and Sherry remain on active reserve duty and, upon representation of counsel, have not experienced imminent threat of activation by virtue of difficulty with the grooming regulations because of the relaxed policy of their local commanding officers.

Defendants first challenge the jurisdiction of this Court. While the Court is satisfied that it does have jurisdiction, a close scrutiny of the problems raised thereby is merited.

The Court is first satisfied that *contra* to defendants' assertion, Jordon may maintain this action in its present form. While the general rule with respect to challenges to military induction of civilians is that said challenges may

be maintained pursuant only to habeas corpus or by defense to criminal prosecution for refusal to submit to induction, see e. g. Feldman v. Local Board No. 22, 239 F.Supp. 102 (S.D.N.Y.1964), mandamus and federal question jurisdiction have been utilized by present members of the armed forces challenging changes in their status. See Bluth v. Laird, 435 F.2d 1065 (4th Cir. 1970), O'Mara v. Zebrowski, 447 F.2d 1085 (3rd Cir. 1971). The Court accordingly concludes that Jordon's activation does not impair his ability to maintain this action in its present form on the same basis as his co-plaintiffs who have not yet been activated. For the reasons that follow, the Court is satisfied as to proper jurisdictional bases for plaintiffs generally.

■ First, jurisdiction is attained by virtue of 28 U.S.C. § 1331. The defendants have challenged an alleged failure of plaintiffs to meet the $10,000 amount in controversy requirement by virtue of the rule of McGaw v. Farrow, 472 F.2d 952 (4th Cir. 1973). The plaintiffs initially urged, and the Court agrees for reasons that follow, that activation for 20 months [1] will cause them to suffer damages in excess of the $10,000 jurisdictional minimum. Defendants have denied this allegation upon information and belief, but neither side has presented specific evidence upon trial with respect to pecuniary loss.[2]

■ Under usual circumstances, before a case goes to trial, as a general rule the trial court must make an initial determination of whether the amount in controversy requirement is satisfied.

Said determination is made upon the general rule that "the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). Upon the strength of this presumption, this matter went to trial.[3] While it is not certain that the disparity in navy as opposed to civilian salaries alone meets the $10,000 requirement, the Court is satisfied upon the general evidence adduced that the disruption in plaintiffs' lives, the pain and suffering caused thereby and the limitations upon those heretofore civilian freedoms are injuries capable of being valued in excess of $10,000. See Garmon v. Warner, 358 F.Supp. 206 (W.D.N.C.1973), Friedman v. Froehlke, 470 F.2d 1351 n.1 (1st Cir. 1972).

The Court is also satisfied that jurisdiction may be maintained pursuant to the Administrative Procedure Act (APA), 5 U.S.C. §§ 702–704. The Court reaches this conclusion notwithstanding the view of some courts that jurisdiction under the APA is not self-executing. See e. g. Yahr v. Resor, 339 F.Supp. 964 (E.D.N.C.1972). Under this view, § 703 of the APA merely provides for judicial review of an agency decision once jurisdiction has been obtained by other means.[4] See generally Charlton v. United States, 412 F.2d 390, 395 (3rd Cir. 1969).

■ Nevertheless, some courts have interpreted § 703 as a jurisdictional

1. Etheridge, if activated, is liable only for active duty in 45 day segments each year.

2. See however note 3 *infra*, concerning representations made by plaintiff Holder.

3. Holder did testify that he is presently earning $6,200 as a civilian and would receive $375 per month as an active naval seaman plus approximately $80 per month allowance for living expenses. Over 20 months the difference in sal-

aries is approximately $1,300. Additionally, by interrogatory Holder also avers that activation would also cause him to suffer a loss of $4,000–$6,000 for "lost opportunity to advance in career over any lifetime" and $1,000–$2,000 moving expenses and storage. These averments are unrebutted.

4. Even under this interpretation, the APA applies by virtue of the Court's conclusion with respect to 28 U.S.C. § 1331, *supra*, and 28 U.S.C. § 1361, *infra*.

statute where jurisdiction is otherwise unattainable. See Garmon v. Warner, *supra*; Friedman v. Froehlke, *supra*, 470 F.2d 1351, 1352, n.1; See 81 Harv. L.Rev. 308, 326–331 (1967). The Court finds this latter view persuasive and, notwithstanding its conclusion with regard to other jurisdictional bases, finds the APA sufficient.

The Court is cognizant of the general rule that requires exhaustion of military remedies prior to maintenance of a suit under the APA. See Beard v. Stahr, 370 U.S. 41, 82 S.Ct. 1105, 8 L. Ed.2d 321 (1962), Anderson v. MacKenzie, 306 F.2d 248 (9th Cir. 1962). Plaintiffs unsuccessfully filed Article 138 grievances. The Court notes further that Jordon, prior to activation, unsuccessfully sought review of the challenged policy with the Commander of the Naval Air Reserve (PX1). It appears that further exhaustion upon the issue presented here by the other plaintiffs would be futile. See Garmon v. Warner, *supra*. The Court is thus satisfied that exhaustion has been made.

The Court is additionally satisfied that it has jurisdiction pursuant to 28 U.S.C. § 1361. While mandamus relief was traditionally confined to ministerial duties, the United States Court of Appeals for the 4th Circuit in Burnette v. Tolson, 474 F.2d 877 (1973) made clear that suits by those who seek performance of constitutional duties owed them by defendants who have a clear duty to perform said duties and where no other relief is available, are within the scope of 28 U.S.C. § 1361. The present plaintiffs base their claim upon an asserted constitutional right and denial thereof by defendants. As Judge McMillen stated in a similar context in *Garmon, supra,* "Plaintiffs do not ask the courts to require the various

defendants to perform a discretionary act; rather they ask that the defendants be required to recognize a constitutional right of plaintiffs which the defendants threaten to disregard." The Court of Appeals also stated, in *Burnette,* that "[m]andamus jurisdiction under 28 U. S.C. § 1361 permits flexibility in remedy," so that the injunctive and declaratory relief sought here is not inconsistent with this jurisdictional basis.[5]

The issue presented by this matter is not complex. Briefly, naval regulations as interpreted prohibit the wearing of all wigs. However, it is the policy of the Navy to allow personnel to wear wigs to cover natural baldness or for cosmetic reasons, but said policy prohibits the wearing of "short hair" wigs by those men who wish to conceal long hair which is otherwise not in compliance with uniform standards. Plaintiffs, who at the time of this suit wore their hair longer than permitted by said standards (hereafter characterized as "long hair"), challenge the short hair wig policy as being violative of their rights under the First, Fourth, Fifth, Ninth and Fourteenth Amendments. Discussion, *infra*.

I  Findings of Fact

Navy General Regulations, Section 1, "Appearance", provides:

"0111.  Grooming

1.  Men

(a) Hair will be neat, clean, trimmed and present a groomed appearance. Hair will not touch the collar except for the closely cut hair at the back of the neck and that will present a tapered appearance. Hair in front will be groomed so that it does not fall below the eyebrows when a person is uncovered and it will not bush below the band of properly worn headgear. In no case will the bulk or length of

5. Plaintiffs also urge that this Court has jurisdiction by virtue of the Tucker Act, 28 U.S.C. § 1346(a)(2). The Court disagrees. This section does not provide jurisdiction for suits which seek equitable relief only. See United States v. Jones, 131 U.S. 1, 9 S.Ct. 669, 33 L.Ed. 90 (1889); R.E.D.M. Corp. v Lo Secco, 291 F.Supp. 53 (S.D.N.Y.1968) affd. 412 F.2d 303 (2nd Cir. 1969). Plaintiffs also urge 42 U.S.C. § 1983 as a jurisdictional basis. This averment is inaccurate as § 1983 does not apply to the federal government.

hair interfere with the proper wearing of any military headgear. The exact maximum length of the hair is no longer specified.

(b) If an individual chooses to wear sideburns, they will be neatly trimmed. Sideburns will not extend below the bottom of the earlobe, will be of even width (not flared) and will end with a clean-shaven horizontal line.

(c) If a beard or moustache is worn, it shall be well-groomed and neatly trimmed in order not to contribute to a ragged appearance. This policy authorizes and includes full and partial beards, van dykes and goatees.

These regulations apply as well to Navy Reserve Personnel, although female personnel are subject to somewhat different standards.

While the above recited grooming regulation does not specifically prohibit wigs, it has been given that effect by the Chief of Naval Operations, with the aforementioned exception. Thus, Command Memorandum, 2/29/72, from the Chief of Naval Personnel states in part:

b. The Chief of Naval Operations desires to permit standards of grooming as close as possible to current civilian styles. At the same time, he expects a commanding officer to ensure the neat, clean military appearance of his personnel. It is considered that Navy grooming policies as now written accommodate both. Therefore, when in uniform or when wearing civilian clothes on military reservations, wigs or hairpieces will not be worn except for cosmetic reasons to cover natural baldness or physical disfiguration.

Plaintiffs who wear long hair challenge this policy.

The mechanism by which plaintiffs would suffer for noncompliance with the Naval policy is the "unexcused drill absence". Generally, a reservist who fails to report for a drill is given upon a showing of good reason for said absence, an "excused drill absence". If not made up within sixty days, a previously excused absence is treated as an unexcused absence. Additionally, though physically present, a reservist may be given an unexcused absence for noncompliance with regulations. As will be discussed, *infra*, Holder for example, was so treated. In any event, whether because of outright unexcused absences or excused absences which are not made up, a reservist who amasses six unexcused absences is subject to recall to active duty. 10 U.S.C. § 673(a).

With regard to the individual plaintiffs, there is no dispute as to Etheridge. He was called to active duty solely by virtue of unexcused absences resulting from noncompliance with the wig regulations. Jordon was activated for the same reason.

There is a dispute, however, as to the cause of Holder's problems. The facts are as follows: On 12/9/72 and 12/10/72 Holder attended two drills and because of noncompliance with the hair regulations, received two unexcused absences. Four drills were held on 1/13 and 1/14/73, of which Holder missed three. He was furnished an opportunity to explain these latter three absences, and apparently did so as they were excused, thus requiring that they be made up within 60 days to prevent them from subsequently being considered unexcused. Holder missed two drills on 2/10/73 and also missed two drills on 2/24/73. After each absence Holder was given an opportunity to explain his absence, and subsequently was excused from the 2/10/73 drill. Holder sought to explain his absence on 2/24/73 due to loss of transportation following an automobile accident on 2/23, but the personnel officer refused to credit same on this basis and the two drills of that date were treated as unexcused. Holder then missed two drills on 3/10/73, but said absences were excused.

On 3/22/73 Holder was advised that the two unexcused drills of 2/24 placed him over the limit and that the Command was requesting authority to call him to active duty.

Holder missed two more drills on 4/14/73 and attended two on 4/15/73.

He stated on the latter date that the 4/14 drills were missed because of work commitments.

On 4/18/72 Holder requested permission to make up the excused absences of 1/13, 1/14, 2/10 and 3/10. The request was denied as to all but the latter on the basis of his failure to comply with the 60 day make-up rule. Thus as of 5/9, when activation orders were sent Holder, he had unexcused absences of one each for 12/9/72, 12/10/72, for three drills on 1/13/73 and 1/14/73, two drills on 2/10/73 and two on 2/24/73, a total of nine. That total exceeds the limit by three.

Holder claims that he was not informed of the 60 day make-up rule, promulgated 1/5/73, until April 17, 1973 and has challenged its application to the above cited absences on military appeal now pending. He also urges that the respective explanations for drills which were disallowed were so treated as a result of discrimination by superior officers motivated by his challenge of the wig rules. Because seven of Holders' absences do not stem directly from the wearing of a short hair wig, defendants claim that Holder's "wig" claim is irrelevant. Holder responds that he has had difficulty in making up the seven absences because superior officers seek to punish him for his participation in this action. The Court finds that latter contention unsupported by the evidence. Further, because Holder is seeking review of the application of the 60 day rule, action here on that issue would be premature.

No testimony was adduced with respect to plaintiffs Sherry and Pugh, although by virtue of the complaint they remain parties plaintiff. Because defendants deny that these latter plaintiffs have received unexcused absences solely as a result of wearing short hair wigs, Pugh and Sherry have failed to sustain their burden.

The Court also notes that defendants admit that the short hair wigs in question conform to the heretofore recited hair regulations.

II Conclusions of Law

The issue presented in this matter is not complex. Plaintiffs do not seek a declaration that the Navy may not limit the outward appearance of its reservists, for plaintiffs have upon admission of defendants, conformed to same by wearing wigs. Nor does the Navy seriously contend that the wearing of wigs *per se* is deleterious, as the wig policy with respect to bald headed men makes clear that wigs generally are not considered inconsistent with the demands of naval service.[6] Rather, the issue is whether the administrative distinction made between wigs for bald headed men and short hair wigs is constitutional.

The United States Court of Appeals for the Fourth Circuit has ruled that freedom of grooming is protected by the Constitution. Massie v. Henry, 455 F.2d 779 (4th Cir. 1972). That right, in some instances falls within the penumbra of the First Amendment, i. e.; when the selected hair length constitutes symbolic speech, or in other instances within the rights guaranteed by the 9th Amendment, i. e. where hair length, as a matter of personal preference, is protected under the right of privacy. See *Massie, supra;* Howard v. Warden, 348 F.Supp. 1204 (E.D.Va.1972); Pierce v. Lewis, No. 196–72–R (E.D.Va. 4/12/73). The instant claims appear to be founded in the right to privacy.

It must be recognized that the rights heretofore referred to which are the subject of the instant controversy, may be curtailed if, upon a weighing of competing interests, the Court concludes that the defendant upon whom the burden is placed establishes the necessity of infringing upon plaintiffs' freedom. *Massie, supra,* 455 F.2d at 783; Pierce v. Lewis, *supra.*

---

6. The Court is not called upon to comment on either of these contentions except to note that they are not in issue here.

 Military men have historically been subject to curtailment of freedoms, as appropriately justified for military reasons. Said curtailment when so justified is not unconstitutional. See E. G. Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953), Raderman v. Kaine, 411 F.2d 1102 (2nd Cir. 1969). However, because certain rights may potentially be curtailed, this fact does not lend itself to a conclusion that such rights do not exist in the absence of curtailment; to the contrary, there is a well recognized presumption against waiver of constitutional rights. See generally Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Accordingly, so long as the military chooses to recognize and not curtail the rights of certain of its personnel it cannot arbitrarily curtail the same rights of other personnel. Policies of that nature, which are prohibited by the Equal Protection Clause of the 14th Amendment as applied to the states, are violative of the Due Process Clause of the 5th Amendment as applied to the Federal Government. Bolling v. Sharpe, 347 U. S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

Defendants have offered no satisfactory explanation as to the justification for curtailing the grooming rights of those who wish to wear short hair wigs and not the rights of those who wish to wear wigs for cosmetic purposes.[7] That policy, therefore, falls short of the test of justification stated in *Massie, supra,* there being no showing of necessity or even of reason, for infringing upon the rights of plaintiffs.

Defendants have sought to characterize this policy as "purely discretionary acts of the United States Navy (which) . . . must not be interfered with by this Court". Defendants do not, nor indeed could they, seriously argue that said discretionary acts need not be bounded by the Constitution; for it is well-settled, fortunately,

that the military is not immune to the provisions of that document. See Burnett v. Tolson, *supra,* Bluth v. Laird, 435 F.2d 1065 (4th Cir. 1970), O'Mara v. Zebrowski, 447 F.2d 1085 (3rd Cir. 1971).

For the reasons stated, therefore, the Court concludes that the short hair wig policy is unconstitutional.

II Relief

An order shall enter enjoining defendants from further activating plaintiff Etheridge on the basis of unexcused absences which may result from his wearing of a short hair wig. Defendants shall also be mandatorily enjoined to void Jordon's activation and remove from his record unexcused absences also caused by the wearing of a short hair wig. The same shall apply with respect to Holder's unexcused absences of 12/9 and 12/10, but for the reasons stated, no other relief will be granted plaintiff Holder. Additionally, plaintiffs Pugh and Sherry having failed to maintain their respective burdens, relief shall be denied as to them.

An order consistent with this memorandum shall issue.

---

7. The Court notes that defendant Rankin wears a hairpiece, though not on the flight line because of inconvenience.