Robert Wayne GRANT, #38013.
Appellant,

v.

Marvin HOGAN, Warden, U.S. N.E. P.,
Appellee.

No. 74–1266.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Sept. 18, 1974.

Decided Nov. 20, 1974.

Robert Wayne Grant, pro se.

S. John Cottone, U. S. Atty., Harry A. Nagle, Michael D. McDowell, Lewisburg, Pa., for appellee.

Before VAN DUSEN, HUNTER and WEIS, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This case presents the question of whether a federal prisoner, against whom a state other than the one of confinement has lodged a detainer based on a pending criminal charge, must first pursue his remedies under the Interstate Agreement on Detainers, 18 U.S.C. App. Article III,[1] before seeking relief from that detainer in federal court.

Since January 5, 1972, Petitioner Grant has been a prisoner at the Lewisburg federal penitentiary in Pennsylvania, and is currently serving a 15-year term on a federal conviction, with a mandatory release date of August 16, 1981. On February 2, 1972, the Connecticut Attorney General lodged a detainer against Petitioner on the basis of a charge pending in that state for "robbery with violence." Grant had been prosecuted on that charge in 1970, but a mistrial resulted, and the State of Connecticut has taken no steps since then to initiate a second trial.

Although the prison officials at Lewisburg promptly notified Grant of the detainer and of his rights under the Interstate Agreement, he did not seek to invoke the provisions of the Agreement. Rather, over a year later, on February 21, 1973, he filed a motion with the Con-

1. Act of Dec. 8, 1970, Pub.L.No. 91-538, §§ 1-8, 84 Stat. 1397. In enacting this law, Congress thereby made the United States a party to the Agreement, which has also been entered into by 37 states. Both Pennsylvania, 19 P.S. §§ 1431-1438, and Connecticut, C.G.S.A. 54-186 to 54-192, are parties.

The purpose of the Agreement is to permit speedy disposition of any untried indictment, information or complaint on the basis of which a detainer has been lodged against a prisoner in another party state. Article III(a) of the Agreement provides that if a prisoner against whom a detainer has been lodged causes to be delivered to the prosecuting officer and the appropriate court a written request for final disposition of the outstanding charges against him, he must be brought to trial within 180 days, unless any continuances have been granted for "good cause." Article III(b) provides that such a written request shall be given by the prisoner to the warden who has custody over him, who shall then promptly forward the request to the appropriate prosecutor and court. If the prisoner is not brought to trial within the 180 day period, assuming no continuance has been granted, Article V(c) of the Agreement provides that "the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect." The Agreement also permits a state to move on its own to bring the prisoner to trial, and provides that if it fails to try him within 120 days after it obtains custody of the prisoner, all charges must be dismissed. Article IV(a), (c) and V(c).

necticut Superior Court in Hartford to dismiss the criminal charge for lack of prosecution. This motion was summarily denied on March 2, 1973, and there is no indication anywhere in the record that Grant appealed from that dismissal or took any further action in Connecticut with respect to the outstanding indictment. On November 29, 1973, allegedly after making repeated requests to George C. Nye of the records office at Lewisburg to remove the detainer, he sought relief in the United States District Court for the Middle District of Pennsylvania by means of a pro se petition under 28 U.S.C. § 2255. The district court dismissed the petition on the ground that Grant had failed to pursue his remedies under the Interstate Agreement and had failed to request that the Connecticut charge be acted upon through the mechanism provided by the Agreement. It is from this ruling that the Petitioner appeals. We affirm.

The law with respect to attacks on detainers presents a number of complex procedural hurdles for lawyers as well as for pro se litigants,[2] and thus we consider it necessary to discuss in some detail the variety of possible routes a prisoner may pursue and their applicability to this case.

We will first note what is *not* involved in this case. In his petition filed with

the district court and in his brief on appeal, Grant makes clear that he does not seek to bar prosecution on the underlying indictment, even though he claims that he has been denied his constitutional right to a speedy trial. Rather, he seeks relief from the detainer through an order requiring the Respondent, the warden of the Lewisburg penitentiary, to "hold for naught" the Connecticut detainer and to give it no effect. Thus, this case is not directly controlled by those decisions which have held that a prisoner may sue in habeas corpus either to demand an immediate trial[3] or to bar prosecution on the underlying charge on speedy trial grounds.[4]

Furthermore, the Petitioner does not challenge as unconstitutional the effect which the Lewisburg prison officials may be giving the detainer. The lodging of detainers frequently results in the placing of additional restrictions on prisoners and the loss of opportunities to participate in rehabilitation programs and receive parole, and the courts have shown an increasing willingness to grant habeas corpus or other types of relief against such restrictions.[5] While the Petitioner here states that he is attacking the detainer in order to be relieved of its adverse effects, the thrust of his challenge is not directed against those effects, but rather against the detainer

2. *See* generally Wexler and Hershey, Criminal Detainers, in a Nutshell, 7 Crim.L.Bull. 753 (1971); Note, Convicts—The Right to a Speedy Trial and the New Detainer Statutes, 18 Rutgers L.Rev. 828 (1964).

3. Braden v. 30th Judicial Circuit Court of Ky., 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973).

4. Kane v. State of Virginia, 419 F.2d 1369 (4th Cir. 1970). Both *Braden* and *Kane* held that habeas corpus relief was available under 28 U.S.C. § 2254 where a prisoner has demanded a speedy trial and has exhausted the remedies of the indicting state. Since neither *Braden* nor *Kane* involved actions where the Interstate Agreement on Detainers was operative, those decisions shed no light on the question of whether a prisoner suing to bar a pending prosecution must first pursue his remedies under the Agreement.

5. *See* Nelson v. George, 399 U.S. 224, 90 S.Ct. 1963, 26 L.Ed.2d 578 (1970); United States ex rel. Jennings v. Pennsylvania, 429 F.2d 522, 523 n. 4 (3d Cir. 1970); Cooper v. Lockhart, 489 F.2d 308, 315 (8th Cir. 1973); Holt v. Moore, 357 F.Supp. 1102 (W.D.N.C.1973); Wexler and Hershey, Criminal Detainers in a Nutshell, 7 Crim.L. Bull. 753, 768 & n. 85 (1971). The Supreme Court in *Nelson* held that a state prisoner seeking habeas corpus relief from the adverse effect given the detainer by the prison officials must first exhaust his remedies in the confining state. As Petitioner Grant is in federal prison, that principle would seem to require him to exhaust his administrative remedies with the Lewisburg prison officials before suing in habeas corpus for this type of relief. Cf. Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).

itself, which he claims is invalid because of the failure of Connecticut officials to afford him a speedy trial on the underlying indictment. His challenge to the restrictions is therefore only incidental to his basic challenge to the detainer.[6]

■ It is clear that habeas corpus is a proper vehicle for challenging a detainer on the ground that prosecution on the underlying charges would be unconstitutional. In United States ex rel. Jennings v. State of Pennsylvania, 429 F.2d 522, 523 (3d Cir. 1970), this Circuit held that a state prisoner may sue under 28 U.S.C. § 2254 for an order directing his warden not to hold him subject to the out-of-state detainer.[7] We also noted there that habeas corpus relief would be available only if the prisoner had exhausted the remedies available to him in the indicting state when seeking his right to a speedy trial on the underlying charges.[8]

■ Unlike *Jennings,* however, this suit can be brought only under 28 U.S.C. § 2241,[9] which does not by its terms require the exhaustion of state remedies or of any other types of remedies. Nevertheless, despite the absence of an explicit exhaustion requirement in section 2241, we have held that federal prisoners suing under section 2241 must first exhaust available administrative remedies. In Soyka v. Alldredge, 481 F.2d 303 (3d Cir. 1973), we held that a prisoner suing under section 2241 to seek credit toward a sentence for time allegedly spent in prison prior to sentencing must first exhaust administrative remedies by seeking relief from the Attorney General or the Director of the Bureau of Prisons after his request had initially been denied by his warden. We required such exhaustion because Congress had enacted a statute, 18 U.S.C. § 3658, which provided that the Attorney Gener-

---

**6.** Since the Petitioner is not primarily challenging specific adverse effects flowing from the detainer, we need not consider whether this repeated ineffectual demands on Mr. Nye to remove the detainer, if in fact made, would constitute a sufficient exhaustion of remedies. Similarly, we do not pass on the question of whether, if the Petitioner had primarily been seeking relief from the adverse effects given the detainer by the Lewisburg prison officials, he would be required to pursue his remedies under the Interstate Agreement. Since the Agreement provides for the speedy disposition of any pending charges and for the possible removal of the detainer on which those charges are based, it may not be relevant to a suit which solely challenges the practices and policies of the prison officials without challenging the validity of the detainer itself. It is clear, however, that some form of exhaustion would be required. See note 5 *supra.* Finally, we reserve judgment on the question of what types of effects given a detainer are subject to constitutional attack.

**7.** *See* also Trigg v. Moseley, 433 F.2d 364, 366 (10th Cir. 1970). *Cf.* Weiss v. Blackwell, 310 F.Supp. 360 (N.D.Ga.1969); Lawrence v. Blackwell, 298 F.Supp. 708 (N.D. Ga.1969); Caruth v. Mackell, 7 Crim.L.Rep. 2414 (E.D.N.Y. July 15, 1970).

**8.** While the relief sought by the prisoner in *Jennings, supra,* was to remove the detainer rather than to bar prosecution for the

charges on which the detainer is based, the exhaustion requirement for the two types of actions is essentially the same, since both types seek relief from the failure of the foreign state to provide the prisoner his constitutional right to a speedy trial. In this respect we find persuasive the reasoning of the Tenth Circuit which rejected the argument that state remedies need not be exhausted where only the "limited relief" of removing the detainer is sought:

> Relief from the detainer in federal habeas [corpus] proceedings is necessarily predicated on a determination that the petitioner's federal constitutional right to a speedy trial on the underlying charge has been irremediably violated. This decision is primarily for the state court where the charge is pending, not the federal court for the district within which the prisoner is incarcerated.

Trigg v. Moseley, 433 F.2d 364, 366 (10th Cir. 1970).

**9.** While the Petitioner brought this action under 28 U.S.C. § 2255, that section is clearly inapplicable since he is not collaterally attacking a federal sentence. Similarly, 28 U.S.C. § 2254 is inapplicable, since he is not suing state officials, whether in the indicting or in the confining state. The only proper jurisdictional basis for this suit is 28 U.S.C. § 2241, the general habeas corpus provision. See Soyka v. Alldredge, 481 F.2d 303, 304 (3d Cir. 1973).

al shall give federal prisoners whatever credit they are entitled to.[10]

Whether the remedies afforded by the Interstate Agreement be characterized as administrative or judicial, we believe that this is even a stronger case for requiring exhaustion by federal prisoners than *Soyka,* since the remedies provided by the Interstate Agreement are more explicit. In making the United States a party to the Agreement, Congress thereby established a simple procedure which permits the speedy disposition of any untried indictment, information or complaint and the dismissal of any untried charges, along with the removal of any detainer based thereon, where the indicting state has not responded within the required period of time to a prisoner's request. It is evident, therefore, that the Agreement provides an effective remedy for the disposition of the Petitioner's claim and that requiring resort to the Agreement may make unnecessary any intervention by the federal courts.[11] See McKart v. United States, 395 U.S. 185, 195, 89 S. Ct. 1657, 23 L.Ed.2d 194 (1969). We therefore believe that it is in the interests of sound judicial administration, and consistent with established principles, to require that prisoners pursue those remedies before seeking relief in the federal courts under section 2241.

While we affirm the district court's action requiring resort to the Interstate Agreement in this case, we recognize that there may be unusual circumstances, not present here, in which failure to pursue remedies under the Agreement would not necessarily preclude habeas corpus relief. If, for example, the Petitioner had demanded a speedy trial of the Connecticut courts without invoking the provisions of the Agreement, had moved to dismiss the charges for lack of speedy prosecution, and had sought and obtained appellate review of the denial of his motion to dismiss, habeas corpus relief might be available despite his failure to pursue his remedies under the Interstate Agreement. In such a situation, where the highest state court in Connecticut had already decided that the Petitioner's right to a speedy trial had not been violated, it would appear useless to require resort to the Agreement. In this case, however, the only action the Petitioner took in Connecticut was to file a motion to dismiss the charges for lack of prosecution. He neither requested a speedy trial nor sought relief from a higher state court, and it is clear that a prisoner must do at least both before seeking federal habeas corpus relief.[12]

The final question remaining is whether the Petitioner could have cir-

10. See also Waddell v. Alldredge, 480 F.2d 1078 (3d Cir. 1973), in which we held that a prisoner suing in mandamus under 28 U.S.C. § 1361 must first exhaust available administrative remedies, even though the remedies there were not provided by statute but by a Bureau of the Persons Policy Statement.

11. In the event that a prisoner's request for disposition of the underlying charges is not acted upon within 180 days, there remains the question of whether a prisoner thereafter may immediately seek habeas corpus in federal court. In *Jennings, supra,* we remanded to the district court to determine whether the prisoner there had exhausted the remedies provided by the indicting state, despite previously noting that he had promptly complied with the procedural requirements of the Interstate Agreement. Since *Jennings* involved a suit under 28 U.S.C. § 2254, which explicitly requires the exhaustion of state remedies, it does not necessarily require a similar result for actions

brought by federal prisoners under § 2241. At the present time, however, we express no opinion as to whether Grant would be required to exhaust Connecticut state remedies by seeking dismissal of the charges and by appealing to higher Connecticut courts if his request under the Interstate Agreement is not acted upon within 180 days.

12. *See, e. g.,* Kane v. State of Virginia, 419 F.2d 1369, 1373 (4th Cir. 1970), where the court enunciated the following prerequisites to federal habeas corpus relief:

(1) that the prisoner demanded a speedy trial,

(2) that the state nevertheless failed to make a diligent effort to obtain him for trial, and

(3) that he has exhausted his state remedies as required by 28 U.S.C. § 2254 by seeking dismissal of the charges against him because of unconstitutional delay.

Furthermore, the court in *Kane* held that only one of the three prisoners in that case,

cumvented the exhaustion requirement by seeking some form of relief from the detainer other than habeas corpus relief. Since this is a pro se case, we are obligated to consider all the possible forms of relief suggested by the Petitioner's challenge. However, on examining the other possibilities, we conclude that no other form of relief is available to the Petitioner.[13]

Since the warden at Lewisburg is a federal official, the Petitioner cannot obtain jurisdiction under 28 U.S.C. § 1343(3) for a Civil Rights action pursuant to 42 U.S.C. § 1983. While he might be able to sue under 28 U.S.C. § 1331, which provides for a general federal question jurisdiction, he would have to satisfy the $10,000 jurisdictional amount requirement, a difficult though not insurmountable problem where injunctive relief is sought with respect to alleged deprivations of constitutional rights.[14] The Petitioner here, of course, has made no attempt to satisfy the jurisdictional amount requirement.[15]

Neither mandamus under 28 U.S.C. § 1361 nor the Administrative Procedure Act, 5 U.S.C. §§ 701–706, are available, since they provide relief only where a clear duty is owed the plaintiff or there is an abuse of discretion, and it is hard to see how the *federal* warden at Lewisburg owes a duty not to recognize a detainer which may be invalid through the inaction of *Connecticut* officials or has abused his discretion by recognizing it. It is also well recognized that mandamus will lie only when no alternative and adequate remedy is available. See Burnett v. Tolson, 474 F.2d 877, 882 (4th Cir. 1973); Carter v. Seamans, 411 F.2d 767, 773 (5th Cir. 1969). The availability of remedies under the Interstate Agreement thus clearly precludes mandamus. In fact, we have previously held that federal prisoners suing in mandamus must exhaust available administrative remedies. Waddell v. Alldredge, 480 F.2d 1078, 1079 (3d Cir. 1973). Finally, with respect to the Administrative Procedure Act, this Circuit has consistently taken the position that the A.P.A. does not provide an independent basis for jurisdiction. See Zimmerman v. United States, 422 F.2d 326, 330 (3d Cir. 1970); Local 542, IUOE v. NLRB, 328 F.2d 850, 854 (3d Cir. 1964).

The judgment of the district court will be affirmed.

---

the one who had sought further judicial relief after failing to obtain a favorable ruling from the trial court, had exhausted his state remedies. On the necessity to exhaust appellate remedies, see Loren v. State of Texas, 440 F.2d 1182 (5th Cir. 1971); Trigg v. Moseley, 433 F.2d 364 (10th Cir. 1970); Note, Developments—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1095–97 (1970).

13. In view of this conclusion, we need not consider whether the Supreme Court's recent decision in Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), mandates that this action be brought only under habeas corpus.

14. See, e. g., Spock v. David, 469 F.2d 1047, 1051–1052 (3d Cir. 1972); Sedivy v. Richardson, 485 F.2d 1115, 1122–1125 (3d Cir. 1973) (Adams, J., concurring); Burnett v. Tolson, 474 F.2d 877 (4th Cir. 1973).

15. We therefore find it unnecessary to consider whether, if the Petitioner had alleged the requisite $10,000 of damages, he would nevertheless be required to exhaust his remedies pursuant to the Interstate Agreement before suing under § 1331.