William SORENSON, Petitioner,

v.

Griffin BELL, Attorney General of the United States, Larry Taylor, Warden, Metropolitan Correctional Center, New York City, Norman A. Carlson, Director, United States Bureau of Prisons, Justice Department, Washington, D.C. and their respective employees and authorized representatives, Eugene Gold, District Attorney, Kings County, State of New York, and any other person having custody or control of the petitioner, William Sorenson, Respondents.

No. 77 Civ. 5180 (CHT).

United States District Court,
S. D. New York.

Nov. 29, 1977.

Frank A. Lopez, Brooklyn, N.Y., for petitioner.

Eugene Gold, Dist. Atty., Kings County, by Douglas Eric Grover, Asst. Dist. Atty., Brooklyn, N. Y., for respondent Eugene Gold.

Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, New York City, by Shirley Leiwant, Asst. U. S. Atty., for other respondents.

MEMORANDUM

TENNEY, District Judge.

By his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 William Sorenson, a federal prisoner currently incarcerated in the Metropolitan Correctional Center in New York City ("M.C.C."), seeks an order of this Court vacating and setting aside the "detainer or request for temporary custody" [1] lodged against him by respondent Eugene Gold, the District Attorney of Kings County. The petitioner con-

1. See note 4 infra.

tends that this detainer violates his rights under the Interstate Agreement on Detainers ("Agreement"), to which the United States is a party. Because this Court finds that Sorenson has failed to pursue the remedy contemplated by the Agreement for such violation, the petition must be denied.

The origins of this action precede its initiation by over one year. This Court is in the unique position of having heard these identical parties in a virtually identical case more than one year ago; the facts as they stood at that time are set forth in an earlier opinion, *Lopez v. Levi*, 422 F.Supp. 846, 848 (S.D.N.Y.1976), and are herein incorporated by reference. To pick up the story where last we left it, Sorenson's state court trial—which was under way at the time of the last petition before this Court and which was the prosecution in connection with which the then-challenged writ of habeas corpus ad prosequendum had been sought—ultimately ended in a mistrial on October 18, 1976 due to the physical incapacity of a key prosecution witness.[2]

Following the mistrial, Sorenson remained in federal custody at the M.C.C. Respondent Gold subsequently filed a "Request for Temporary Custody" dated November 4, 1976 with the Warden of the M.C.C., requesting that Sorenson be delivered up for prosecution on the same indictment, 1518/1975. Sorenson challenged this request, again through an order to show cause and again seeking a writ of habeas corpus. Sorenson's application was heard by Judge Metzner and denied. *Lopez v. Levi*, 76 Civ. 5352 (S.D.N.Y. Dec. 10, 1976).

Although the officials at the M.C.C. had made an "Offer to Deliver Temporary Custody" to respondent Gold on November 11, 1976, *see* Agreement Art. V, it was not until September of 1977 that respondent Gold sought to obtain Sorenson from the M.C.C. pursuant to the "Request" of November 4, 1976. He was informed by officials at the M.C.C. that custody of Sorenson would not be surrendered because the November 4 "Request" was by this time "stale." Respondent Gold then filed the "Request for Temporary Custody" dated September 28, 1977 which is the subject of the instant petition.

In the period since this Court's last opinion on these issues, the United States Court of Appeals for the Second Circuit has decided no fewer than four cases concerning the Interstate Agreement on Detainers. *Edwards v. United States*, 564 F.2d 652 (2d Cir. 1977); *United States v. Chico*, 558 F.2d 1047 (2d Cir. 1977); *United States v. Ford*, 550 F.2d 732 (2d Cir. 1977); *United States v. Mauro*, 544 F.2d 588 (2d Cir. 1976). (The United States Supreme Court has granted certiorari in two of these cases. *United States v. Mauro*, —— U.S. ——, 98 S.Ct. 53, 54 L.Ed.2d 71 (1977); *United States v. Ford*, 46 U.S.L.W. 3214 (U.S. Oct. 4, 1977) (No. 77-52).) While these cases clarify the law in this circuit with respect to the Agreement,[3] they do not shed direct illumination on the problems posed in this case since each involved a *state* prisoner transferred to *federal* custody who subsequently challenged his *federal* conviction as violative of the Agreement. The current case is quite different: Sorenson is presently a *federal* prisoner who seeks to prevent his transfer to *state* custody for the purposes of trial on a *state* indictment.

The United States Court of Appeals for the Third Circuit considered facts very similar to these in *Grant v. Hogan*, 505 F.2d 1220 (3d Cir. 1975). In that case, Grant, a federal prisoner, filed a petition pursuant to 28 U.S.C. § 2241 seeking an order that the

---

2. Respondent Gold contends that Sorenson was never in state custody during his September-October 1976 trial since he spent his nights at the M.C.C. and was produced daily in state court pursuant to a writ of habeas corpus ad prosequendum and always in the custody of a United States Marshal.

3. For instance, *United States v. Mauro, supra,* seems to make it clear that a "writ of *habeas corpus ad prosequendum* is is a detainer" within the meaning of the Agreement, at least when issued by a federal court to obtain a state prisoner for trial in federal court. 544 F.2d at 592. Parity of reasoning would seem to make that declaration equally true of a *state* court writ of habeas corpus ad prosequendum.

warden of the federal prison where he was incarcerated "hold for naught" the detainer lodged against him by the state attorney general on a charge of robbery with violence.[4] In *Grant*, as in the instant case, petitioner's challenge was not directed against the adverse effects to the prisoner which can be caused by the presence of a detainer "but rather against the detainer itself, which he [claimed was] invalid because of the failure of [state] officials to afford him a speedy trial on the underlying indictment." 505 F.2d at 1222–23.

The *Grant* court denied the relief requested, finding that the "interests of sound judicial administration" required the prisoner to pursue the clear and effective remedy granted by the Agreement itself. *Id.* at 1224, *citing McKart v. United States*, 395 U.S. 185, 195, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).

This Court agrees with the conclusion of the *Grant* court, which seems to be directly mandated by the explicit terms of the Agreement:

> "If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information, or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in article III of article IV hereof, *the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detain-*

*er based thereon shall cease to be of any force or effect."* Agreement Art. V(c) (emphasis added).

Thus, the Agreement gives Sorenson a speedy and effective remedy for violations of its terms—mandatory dismissal of the indictment and vacating of the detainer—but that remedy lies at the disposal of "the appropriate court of the jurisdiction where the indictment . . . has been pending," in this case, the New York State Supreme Court, Kings County. Indeed, Sorenson made the appropriate motion in Part 51, Criminal Term of that court on August 1, 1977, and that motion is still pending. Affidavit of Douglas Eric Grover, sworn to November 9, 1977, at 5. The terms of the Agreement, which the petitioner wishes rigorously applied to this case, require that this Court not exercise a function which the Agreement clearly assigns to the "appropriate court of the jurisdiction where the indictment . . . is pending." Accordingly, the petition is dismissed.

So ordered.

---

**4.** No mention is made in *Grant* of a "request for temporary custody," although the Agreement plainly contemplates a two-step process. First a "detainer" *is* lodged against a prisoner by the state authorities. Agreement Arts. III(a), IV(a). Then the prisoner can request "a final disposition of his case," *id.* Art. III(a), or the state authorities can make a "written request for temporary custody." *Id.* Art. IV(a). Yet, it is not clear that this distinction has been maintained by the courts or the authorities. In *United States v. Mauro, supra*, the court of appeals, after adopting Congressman Kastenmeier's definition of a "detainer" as " 'a notification filed with the institution in which a pris-

oner is serving a sentence, advising that he is wanted to stand trial on pending criminal charges in another jurisdiction,' " 544 F.2d at 591, found that a writ of habeas corpus ad prosequendum is "a detainer entitling the state inmate to the protection provided in Article IV" of the Agreement. *Id.* at 592. Yet, Article IV deals with the prisoner's rights upon the filing of a "written request for temporary custody," whereas Article III discusses the rights which obtain when only a "detainer" has been filed. Similarly, in the case at bar there seem to have been requests for temporary custody but no detainers per se.