RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0142p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

TYGANDA GILMORE,

　　　　　　　　　　*Petitioner-Appellant*,

　　*v.*

　　　　　　　　　　　　　　　　　　　No. 17-5710

DAVID J. EBBERT, Warden,

　　　　　　　　　　*Respondent-Appellee*.

───────────────

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 6:16-cv-00189—Danny C. Reeves, District Judge.

Decided and Filed:  July 17, 2018

Before:  SUTTON, McKEAGUE, and KETHLEDGE, Circuit Judges.

───────────────

## LITIGANT

**ON BRIEF:**  Tyganda Gilmore, Lewisburg, Pennsylvania, pro se.

───────────────

## OPINION

───────────────

SUTTON, Circuit Judge.  Tyganda Gilmore wants closure.  While Gilmore was serving a sentence in federal prison, South Carolina told him that it planned to charge him with unrelated state-law offenses.  He responded by asking state officials to coordinate with the Federal Bureau of Prisons to resolve the outstanding charges.  But they never replied.  Gilmore filed a habeas petition in federal court asking the court to dismiss the state charges because South Carolina violated the Interstate Agreement on Detainers Act.  The district court refused.  We affirm on the ground that he named the wrong official.

I.

In 2006, Gilmore pleaded guilty to federal drug offenses and began serving a 188-month sentence. South Carolina had planned to charge Gilmore with assault and battery and failure to pay child support. But the federal government indicted him first. Because he was already in federal custody, the State filed a detainer—a request from one jurisdiction (South Carolina) asking another (the Federal Bureau of Prisons) to notify it before releasing a prisoner—for the assault and battery charges. That way South Carolina could prosecute Gilmore when he was released.

The Bureau told Gilmore about the state charges and explained his rights under the Interstate Agreement on Detainers Act. If he asked South Carolina to resolve the charges underlying the detainer, the State would need to try him within 180 days. *See* 18 U.S.C. app. 2, § 2, art. III(a). Failure of the State to do so would result in dismissal of the charges and void the detainer. *Id.* art. V(c). Gilmore told prison officials that he wanted to exercise his rights under the Act. The Bureau did its part to help. On October 12, 2006, it notified the Solicitor of Richland County, South Carolina that Gilmore had requested final disposition of the charges. It later offered to deliver Gilmore to South Carolina for temporary custody. The Bureau followed up on its earlier correspondence.

In January 2007, the Solicitor's Office replied that it "ha[d] no charges pending" against Gilmore. R. 1-2 at 14. It could only speculate that any charges originated in the Richland County Sheriff's Department. The Bureau informed the State that it "was this office's intention that your office would forward the paperwork to the appropriate Court" but volunteered to take on the task. *Id.* at 15. On January 26, 2007, it forwarded Gilmore's request to Richland County's Magistrate Court. No one responded—not the Solicitor, not the Sheriff, not the County Court.

Four years later, South Carolina sent another detainer request to the Bureau, this time with the charge that Gilmore had failed to pay child support. Gilmore took matters into his own hands. In 2015, he wrote the South Carolina Magistrate Judge assigned to his case. "I have been attempting to resolve the outstanding issues" for almost ten years, he said, adding that the

detainers made it difficult for him to "complete numerous rehabilitative programs." *Id.* at 1. No one responded.

Gilmore filed two habeas petitions in the U.S. District Court for the District of South Carolina alleging that South Carolina violated the Interstate Agreement on Detainers Act. That court concluded that it lacked personal jurisdiction over Gilmore's federal custodian, Big Sandy Warden Gregory Kizziah, in Inez, Kentucky. It transferred both petitions to the Eastern District of Kentucky. That court, in turn, dismissed both petitions for failure to exhaust. On appeal, Gilmore pursues only his petition relating to the assault and battery detainer.

## II.

The Interstate Agreement on Detainers Act did not start out as an act. It began as an agreement between States. In the 1950s, the Council on State Governments proposed an interstate agreement to hasten the resolution of lingering criminal detainers. *United States v. Mauro*, 436 U.S. 340, 349–51 (1978). Before long, twenty-two States had signed the agreement. AGREEMENT ON DETAINERS, NAT'L CTR. FOR INTERSTATE COMPACTS. That approach implicated the Compact Clause, which provides that "No State shall, without the Consent of Congress, . . . enter into any Agreement or Compact with another State." U.S. CONST. art. I, § 10, cl. 3. In 1970, Congress "enacted" the agreement "into law." 18 U.S.C. app. 2, § 2. At the same time, Congress made the federal government a party "State" to the deal. *Id.* art. II(a).

Under the Act, a prisoner held in custody by one State may "request . . . a final disposition" of the charges underlying a detainer lodged against him by a different State. *Id.* art. III(a). After the request, the Act requires the State with the detainer to try him within 180 days. *Id.* Otherwise, "the appropriate [State] court" must dismiss the charges with prejudice "and any detainer based thereon shall cease to be of any force or effect." *Id.* art. V(c). Gilmore argues that South Carolina violated its obligations under the Act after he initiated this process. Although the 180-day period lapsed in 2007, South Carolina did not dismiss the assault and battery charges and indeed filed another detainer based on those same charges four years later.

The district court questioned whether Gilmore exhausted his state remedies. Although he sent several letters, it's unclear whether he formally petitioned a South Carolina court for relief

under the Act. That's a fair question. *See Cain v. Petrovsky*, 798 F.2d 1194, 1195 (8th Cir. 1986); *Grant v. Hogan*, 505 F.2d 1220, 1223–24 (3d Cir. 1974).

But there are two issues that precede that one. The federal habeas statute covers individuals "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Gilmore is "in custody" even though he challenges a potential future confinement. That is the lesson of *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 488–89 (1973). *Braden* held that an Alabama prisoner who wanted Kentucky to give him a speedy trial after it lodged a detainer against him was in the "custody" of Kentucky. Just like the petitioner there, "the [Federal] warden acts here as the agent of [South Carolina] in holding [Gilmore] pursuant to the [South Carolina] detainer." *Id.* at 489 n.4.

But Gilmore's petition nonetheless falters on the ground that he named the wrong official. A habeas claimant ordinarily must name his immediate custodian at the time of filing. *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). The writ runs against the "the person who holds [the petitioner] in what is alleged to be unlawful custody." *Braden*, 410 U.S. at 494–95. So, where a petitioner challenges his "present physical confinement," that person is "the warden of the facility where the respondent is being held." *Rumsfeld*, 542 U.S. at 435. Gilmore followed the general rule here. He sued his federal warden, and the District of South Carolina transferred the case to the Eastern District of Kentucky, which has jurisdiction over the warden. 28 U.S.C. § 2241(a).

But "the immediate physical custodian rule, by its terms, does not apply when a habeas petitioner challenges something other than his present physical confinement." *Rumsfeld*, 542 U.S. at 438. That's why the proper respondent in *Braden* was not the prisoner's Alabama warden "but was instead the Kentucky court in which the detainer was lodged." *Id.* So also here. Gilmore alleges that South Carolina—not the Federal Bureau of Prisons—holds him in unlawful custody by violating his rights under the Act. He must sue the state court that "exercises legal control with respect to the challenged 'custody.'" *Id.* Gilmore went to the right place: the District of South Carolina. He just named the wrong official.

All of this suffices to explain why we must dismiss this petition. Before Gilmore refiles a federal habeas petition against a different respondent, as is his right, he may wish to take account of a few considerations and, if appropriate, the next trial court may wish to appoint pro bono counsel to help Gilmore navigate these shoals. First, he needs to determine whether a violation of the Act states a cognizable federal habeas claim under any of the potential habeas statutes. *See, e.g.*, 28 U.S.C. §§ 2241, 2254, 2255. If Gilmore's claim is not cognizable, there's no point in telling him to refile against a different official or to exhaust a claim we cannot hear. *See Reed v. Farley*, 512 U.S. 339, 359 (1994) (Scalia, J., concurring in part and concurring in the judgment).

Second, while we need not resolve the exhaustion question, Gilmore may wish to determine whether exhaustion applies or moot the point by presenting his claim to the South Carolina courts anyway. The Act "is both federal law and the law of" South Carolina, and the State's courts, we trust, would apply it fairly. *Reed*, 512 U.S. at 355; *see* S.C. Code Ann. § 17-11-10.

Third, because South Carolina charged Gilmore almost thirteen years ago, he may wish to ensure that no time bar or other state-law limitation on a criminal charge applies at this point. South Carolina, it is true, appears to be one of two States that have no statute of limitations for any crime, whether a felony or a misdemeanor. *See Remmick v. State*, 275 P.3d 467, 470 (Wyo. 2012); Lindsey Powell, *Unraveling Criminal Statutes of Limitations*, 45 AM. L. REV. 115, 147, 149 (2008). But other statutory, constitutional, or common law limitations may limit a belated prosecution.

For these reasons, we affirm the decision of the district court and remand the case with instructions to dismiss the petition without prejudice.