**H. KESSLER & COMPANY, Plaintiff-Appellee-Cross Appellant,**

v.

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION et al., Defendants-Appellants-Cross Appellees.**

No. 72–1082.

United States Court of Appeals,
Fifth Circuit.

Jan. 29, 1973.

Joseph Ray Terry, Jr., Regional Attorney, Atlanta Regional Office, EEOC,

Atlanta, Ga., John DeJ. Pemberton, Acting Gen. Counsel, David Zugschwerdt, Acting Chief, Trial Section, Julia Cooper, Chief, Appellate Section, Lutz Alexander Prager, EEOC, Washington, D. C., for defendants-appellants.

Cleburne E. Gregory, Jr., Alexander Cocalis, Allen I. Hirsch, Atlanta, Ga., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and TUTTLE, WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM, and RONEY, Circuit Judges.

TUTTLE, Circuit Judge:

The court, having been convened en banc and having considered additional briefs, reverses in part the decision of the original panel in this matter, Kessler and Company v. Equal Employment Opportunity Commission, 468 F.2d 25 (C.A.5, 1972).

The precise question presented for en banc review is whether the non-disclosure provisions of the Civil Rights Act of 1964, specifically section 709(e), 42 U.S.C.A. § 2000e–8(e), make it unlawful for the Equal Employment Opportunity Commission, prior to the institution of formal legal proceedings, to disclose to the aggrieved party or his attorney information obtained by the Commission during the course of its administrative investigation of a claim of employment discrimination. The original panel held that the Act prohibited such disclosure, one judge dissenting. We reverse that aspect of the decision but affirm as to the other issues decided by the panel.

Our inquiry is directed to that portion of the Civil Rights Act which outlines the procedures to be followed by the Commission after a claim of discrimination has been filed by a private party. In this limited respect the Act contains three separate prohibitions against public disclosure. Two of these are contained in Section 706(a), 42 U.S.C.A. § 2000e–5(a), which describes the principal functions of the Commission. It provides:

"Whenever it is charged in writing under oath by a person claiming to be aggrieved, or a written charge has been filed by a member of the Commission where he has reasonable cause to believe a violation of this subchapter has occurred (and such charge sets forth the facts upon which it is based) that an employer, employment agency, or labor organization has engaged in an unlawful employment practice, the Commission shall furnish such employer, employment agency, or labor organization (hereinafter referred to as the 'respondent') with a copy of such charge and shall make an investigation of such charge, *provided that such charge shall not be made public by the Commission.* If the Commission shall determine, after such investigation, that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. *Nothing said or done during and as a part of such endeavors may be made public by the Commission without the written consent of the parties,* or used as evidence in a subsequent proceeding. Any officer or employee of the Commission, who shall make public in any manner whatever any information in violation of this subsection shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not more than $1,000 or imprisoned not more than one year." (Emphasis added.)

The third prohibition against disclosure is contained in Section 709(e) which provides:

"It shall be unlawful for any officer or employee of the Commission *to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section* prior to the institu-

tion of any proceeding under this sub-chapter involving such information. Any officer or employee of the Commission who shall make *public* in any manner whatever any information in violation of this subsection shall be guilty of a misdemeanor and upon conviction thereof, shall be fined not more than $1,000 or imprisoned not more than one year." (Emphasis added.)

It is this last provision with which we are directly concerned. The Commission takes the position that neither the charging party nor his attorney is, within the intendment of this statute, a member of the "public" to whom disclosure of "any information obtained by the Commission pursuant to its authority" is prohibited. This position is reflected in the Commission's current regulations which, insofar as relevant, provide as follows:

"Neither a charge, nor information obtained pursuant to section 709(a) of Title VII, nor information obtained from records required to be kept or reports required to be filed pursuant to sections 709(c) and (d) of said Title, shall be made matters of public information by the Commission prior to the institution of any proceedings under this Title involving such charges or information. *This provision does not apply to such earlier disclosures to the charging party, the respondent, witnesses, and representatives of interested Federal, State and local agencies as may be appropriate or necessary to the carrying out of the Commission's functions under the Title,* nor to the publication of data derived from such information in a form which does not reveal the identity of the charging party, respondent, or person supplying the information." (Emphasis supplied.) 29 C.F.R. § 1601.20.

The Commission's policy was further explained in a memorandum, dated September 15, 1970, to all Commission field directors and field attorneys by the then General Counsel. The memorandum states:

"The investigator's report in a case may be examined by counsel for the charging party after expiration of the statutory period for investigation and conciliation (60 days from the date of filing with the Commission) to *determine whether or not, in counsel's opinion, the facts justify the commencement of a civil action* pursuant to Section 706(e) *and, if so, to obtain information relevant to drafting the complaint.* Before a report is made available, *counsel must agree that it will not be used for any other purpose* and that the information contained therein will not be disclosed except to the extent necessitated by filing the complaint." (Emphasis supplied.)

Our task here, of course, is to ascertain whether the regulation and the Commission's stated policy with respect to disclosure are consonant with the statutory requirements. We think that the position taken by the Commission constitutes an accurate assessment of the relevant law.

It is noted at the outset that we are dealing here with a very limited form of disclosure, that is, disclosure *only* to the parties themselves or their attorneys of information obtained by the Commission during the course of its investigation of a complaint. The question is whether such limited disclosure makes "public" this information, in violation of Section 709(e), supra.

In light of the purpose of the Civil Rights Act, and recognizing the fact that the complaining person is, almost by definition, a person in impecunious circumstances, and bearing in mind the fact that "the importance of the private litigant in the context of Title VII cannot be over-emphasized," Sanchez v. Standard Brands, Inc., 431 F.2d 455, 460, n. 1 (C.A.5, 1970), and bearing in mind further the very limited time that is given to the charging party to file suit after the Commission notifies him that it has been unable to obtain voluntary compli-

ance (30 days), it is obvious that the charging party literally needs all the help he can get in order to procure counsel, convince him that a right of action truly exists with evidence to support it, and prepare and file suit within the statutory period. It is within this context that we must consider whether the charging party himself, or his attorney is, within the meaning of the statute, a member of the "public".

The scant legislative history that is available with respect to this particular portion of the Act appears to support the position expressed by the Commission in its regulation. See Miller v. International Paper Co., 408 F.2d 283 (C.A.5, 1969). Senator Humphrey introduced the compromise amendment which eventually became law. In his statement he undertook to give a gloss to the amendment which would permit such disclosure as is necessary to the carrying out of the Commission's duties under the statute. He said:

"Provisions preserving the confidentiality of Commission procedures have been added to Sections 706(a) and 709(e). Section 706(a) provides that a charge filed with the Commission shall not be made public and provides a criminal penalty for a Commission employee who violates this rule. Section 709(e) prohibits the Commission and its employees from making public information obtained by compulsory process in the course of litigation arising under the title.

"*It should be noted that this is a ban on publicizing and not on such disclosure as is necessary to the carrying out of the Commission's duties under the statute.* Obviously, the proper conduct of an investigation would ordinarily require that the witnesses be informed that a charge had been filed and often that certain evidence had been received. Such disclosure would be proper. The amendment is not intended to hamper Commission investigations or proper cooperation with other State and Federal agencies, but *rather is aimed at the making available to the general public of unproven charges.*" 110 Cong.Rec. 12723. (Emphasis supplied.)

That the non-disclosure provisions of the Act were never intended to apply to the immediate parties is given further substance by the legislative history of the 1972 amendments to Title VII. Though the provisions with which we are here concerned were left intact, the Senate bill contained a proposed amendment which would have augmented the existing prohibitions by prohibiting the Commission and the Attorney General from disclosing "any records or papers produced pursuant to this Title" to *anyone* other than Congress and, government agencies or for use before a court or grand jury.[1] This proposal, however, was excised in Conference without explanation. This would seem to indicate that, in adopting the Equal Employment Opportunity Act of 1972, Congress considered and rejected the sort of restric-

---

1. The proposed subsection read:

"(e) Any record or paper required by Section 709(c) of this title to be preserved or maintained shall be made available for inspection, reproduction, and copying by the Commission or its representative, or by the Attorney General or his representative upon demand in writing directed to the person having custody, possession, or control of such record or paper. Unless otherwise ordered by a court of the United States, neither the members of the Commission or it representatives nor the Attorney General or his representatives shall disclose any record or paper produced pursuant to this title or any production or copy, except to Congress or any committee thereof, or to a governmental agency, or in the presentation of any case or proceeding before any court or grand jury. The United States district court for the district in which a demand is made or in which a record or paper so demanded is located, shall have jurisdiction to compel by appropriate process the production of such record or paper." Senate Report No. 92–415 (October 28, 1971) 55–56.

tions on disclosure which the original panel decision would have imposed.

■ Nonetheless, we find it unnecessary to rely extensively on these slender wisps of legislative history to support our conclusion here. We note that although the operative phrase "to make public" is nowhere defined in the Act, it is used, other than in Section 709(e), in a context which strongly suggests that the charging party and his attorney are not comprehended within the term "public". As previously indicated, the provisions of the Act here involved contain three separate prohibitions against disclosure, each pertaining to a different type of information. Two of these are found in Section 706(a). The first provides that if the Commission has reasonable cause to believe that a violation of the Act has occurred, it shall furnish the employer with "a copy of such charge and shall make an investigation of such charge, *provided that such charge shall not be made public.*" Of course, the term "public" in this context could not have been intended to apply to the complaining party since he was the individual who initiated the proceedings and thus, necessarily, was privy to the contents of the charge.

Section 706(a) further provides that the Commission shall undertake to eliminate discrimination by informal methods

and that "Nothing said or done during and as a part of such endeavors may be made public by the Commission *without the written consent of the parties . . . .*" This prohibition, like that pertaining to publication of the original charge, plainly suggests that the parties themselves would not be embraced by the term "public." Of particular significance is the fact that such information may be made "public" *only upon the written consent of the parties.* It would indeed be anomalous if the parties, whose written permission is required in order to publicize what was "said or done", would themselves have been considered by Congress to be members of the "public" to whom disclosure is prohibited.

We think it would likewise be anomalous to ascribe to the term "public" a different meaning for purposes of Section 709(e) than that given it for purposes of Section 706(a). These two sections treat of essentially the same subject matter, i. e., the powers and duties of the Commission in following up a charge of employment discrimination, and, thus, absent any clear indication in the statutes to the contrary, we think they should be read in a manner consistent with one another.[2]

This conclusion is further justified on policy grounds.[3] It is difficult to under-

---

2. The fact that Section 709(e) makes it unlawful for the Commission to publicize its information "in any manner whatever" does not require a different result. Reading the words "in any manner whatever" in a common sense fashion, it becomes clear that this modifying phrase must refer to the means of publication, rather than the persons to whom disclosure is forbidden.

3. Though we do not so decide, we note that Section 709(e) is suceptible to a broader interpretation than that urged by the Commission. The section makes it unlawful for the Commission to divulge to the public "any information obtained by the Commission pursuant to its authority under this section *prior to the institution of any proceeding* under this subchapter involving such information." The term "proceeding" is not defined, though at

the very least it may be presumed to include formal lawsuits. However, the term may have a broader meaning. Under Section 706(a) the Commission, upon a finding of reasonable cause, is obliged to endeavor to eliminate unlawful discrimination by "informal methods" of conference, conciliation, and persuasion. Though such informal undertakings are not specifically referred to in the statute as "proceedings" Congress may well have considered them to be such. It is noted that Section 706(a) further provides that nothing said or done during such endeavors at conciliation shall be "used as evidence in a *subsequent proceeding.*" The emphasized words suggest that the Commission's conciliatory endeavors are themselves to be treated as "proceedings" for purposes of the Act. If this interpretation of the statute were applied, the Commission would be free to publicize the

stand how a grievant could amass the statistical information alone that would be necessary in order for him to know whether he had anything more than a suspicion of discrimination without access to the kind of information referred to in Section 709(e) concerning his employer's practices with regard to promotions, terminations and the like. One must ask how such a party could persuade an attorney to handle his case without having available some of the information which, under the various statutes, would come into the Commission's investigatory files. The courts of this circuit have previously found that competent lawyers are not eager to enter the fray in behalf of a person who is seeking redress under Title VII. This is true even though provision is made for payment of attorney's fees in the event of success. In the case of Petete v. Consolidated Freightways, 313 F.Supp. 1271 (DCND, Tex., 1970), for instance, the court found that "[f]urther complicating plaintiff's problem has been the reluctance of the attorneys she has approached to undertake the specific and complex challenges of a Title VII lawsuit which are not common to more frequently litigated areas of the law." See also, Edmonds v. E. I. DuPont de Nemours & Co., 315 F.Supp. 523, 524 (D.C. Kan., 1970); Sanders v. Russell, 401 F. 2d 241 (C.A.5, 1968).

■ For the foregoing reasons we conclude that Section 709(e) was not intended to prohibit the Commission from divulging to the parties involved or their counsel information obtained by the Commission during its investigation of a claim of unlawful discrimination. The Commission may, of course, impose such limitations on disclosure as may be necessary in furtherance of the Commission's functions under the Act and to prevent disclosure of the information to the public generally. We would therefore construe the law as permitting the

disclosure of information to counsel in the manner prescribed by the General Counsel of the Commission in his memorandum of September 15, 1970, quoted above.

The judgment of the trial court is affirmed in part and reversed in part. The case is remanded for further proceedings not inconsistent with this opinion.

COLEMAN Circuit Judge, with whom CLARK, Circuit Judge, joins, dissenting:

I respectfully disagree with the views of the *en banc* Court.

As the record will show, I participated in the decision of the panel, and concurred in it. Further consideration has resulted in no alteration of opinion. The panel opinion will, I suppose be reported along with the en banc opinion. The citations to the opinion of the District Court are there set forth.

I shall not retrace those opinions, but shall content myself with saying, once more, that the sole issue here is whether the statute authoriezs the EEOC to disclose information obtained through its investigation to the charging party or attorney prior to the institution of court proceedings.

After lengthy consideration, the Congress failed to authorize such a disclosure, so now, in my opinion, the Court adjudicates wherein the Congress failed to legislate.

There really is no legislative history justifying such a result. One swallow does not make a spring and, the expressions of two or three Congressmen, of a total of 531, falls within the same category.

Congress did clearly say, however, that prior to the institution of proceedings information obtained pursuant to an investigation shall not be made public *in any manner whatsoever.*

---

information referred to in Section 709(e) once it had instituted settlement proceedings pursuant to Section 706(a). Needless to add, under such a view, the parties and their attorneys would at that time be eligible to receive the information.

That is to me plain enough, so I think the District Court correctly decided this issue.

CLARK, Circuit Judge, with whom GODBOLD and INGRAHAM, Circuit Judges, join, dissenting:

For the reasons set out in the panel per curiam opinion, especially the preservation of that spirit of voluntary and cooperative disclosure so necessary to obtain unlitigated compliance, I respectfully dissent.