**ASSOCIATED DRY GOODS CORPORATION, Plaintiff,**

v.

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Defendant.**

Civ. A. No. 75–297–R.

United States District Court, E. D. Virginia, Richmond Division.

June 25, 1976.

Hill B. Wellford, Jr., Hunton & Williams, Richmond, Va., for plaintiff.

Anthony DeMarco, Washington, D.C., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Associated Dry Goods Corporation (hereinafter "Associated") brings this civil action against the Equal Employment Opportunity Commission (hereinafter "Commission") for declaratory, injunctive and other relief. Specifically, Associated seeks to prevent the EEOC from permitting the disclosure to potential litigants of information which the EEOC has subpoenaed from Associated's Horne's Division in the furtherance of an investigation into employment discrimination charges. Associated is a Virginia corporation owning numerous retain department stores throughout the United States, operating under various names. One, "Horne's," operates in the metropolitan Pittsburgh, Pennsylvania area. The Com-

mission, an agency of the federal government,[1] is charged by virtue of Title VII of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. §§ 2000e, *et seq.,* with the responsibility *inter alia* of investigating charges of alleged discrimination in employment on account of sex, race, religion, or national origin.

From November, 1971 through June, 1973, several employees and former employees of Horne's filed charges of alleged discrimination in employment on account of their sex or race pursuant to § 706(b) of Title VII, 42 U.S.C. § 2000e–5(b). The Commission commenced to investigate the charges, and its Pittsburgh district office served "interrogatories" on Horne's in February and April of 1974. The questionnaires sought a wide range of information on Horne's business and employment practices, not limited to the situations of the individual charging parties. Horne's refused to answer without assurance from the Commission that the information it provided would not be disclosed to the charging parties, their attorneys, or others. Associated's reluctance apparently stemmed from an incident in which an employee of the Commission transmitted information on February 25, 1974 concerning the discrimination charges to a private attorney for one or more of the charging parties. Attempts

to resolve the dispute were unavailing,[2] and on October 18, 1974, the Commission issued a subpoena for the records sought. Horne's petitioned for revocation of the subpoena under date of October 23, 1974 in accordance with Commission regulation 29 C.F.R. § 1601.56(b). The Commission denied the petition by letter of May 9, 1975. So far as this Court's file reflects, the Commission has not as yet received any of the information or documents requested of Horne's by interrogatory or by subpoena duces tecum.[3]

The instant action seeks to prevent the Commission from permitting the disclosure to charging parties and other persons of information which Associated's Horne's Division supplies to it during the investigation of the employment discrimination charges. Plaintiff alleges that much of the information sought is of a highly personal nature, and further that much of the information is commercial or financial and its disclosure would substantially injure the business's competitive position. Accordingly, the plaintiff seeks a permanent injunction enjoining the Commission from disclosing to any person any records which Horne's might be required to produce during the investigation of the administrative charges. The plaintiff also seeks a declaratory judgment holding the disclosure policies of 29

---

1. The Freedom of Information Act defines agency as follows:

 For purposes of this section, the term 'agency' as defined in § 551(1) of this Title includes any executive department, military department, government corporation, government control corporation, or other establishment in the Executive Branch of the government (including the Executive Office of the President), or any independent regulatory agency. 5 U.S.C. § 552(e).

 The Administrative Procedure Act, 5 U.S.C. § 551(1) defines "agency" (with certain exceptions not relevant here) as: ". . . each authority of the Government of the United States, whether or not it is within or subject to review by another agency . . ."

2. In a letter directed to the plaintiff it was explained that the Commission's policy was to

disclose to a charging party his own case files, including data submitted by the employer in response to Commission interrogatories, and "related case files", those files involving the same employer and compiled during the investigation of any similar charges filed by other individuals. The only condition of such disclosures indicated was that the charging party was to use the information "in connection with contemplated or pending litigation." The Commission furthermore noted that it had "no way of preventing charging parties from transmitting information they have" to others.

3. The Commission has moved to enforce its administrative subpoena duces tecum in federal district court in Pittsburgh, Pennsylvania. *E.E. O.C. v. Joseph Horne Co., a Division of Associated Dry Goods, Corp.,* C.A. No. 76–707 (W.D. Pa.).

C.F.R. §§ 1601.20,[4] and 1610.17(b),[5] and § 83 of the Commission's Compliance Manual, Compliance Manual Procedures, Volume 1, §§ 83.1–.9 (May 1973),[6] to be null and void as they conflict with federal statutory law. These regulations exclude the Commission's investigative files from the nondisclosure provisions of §§ 706(b) and 709(e) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–5(b) and 2000e–8(e), the exemptions to the Freedom of Information Act, *as amended,* 5 U.S.C. § 552(b), and the policies underlying those exceptions. The Compliance Manual affirmatively authorizes disclosure of the Commission's case files to selected parties.

The defendant has filed a motion to dismiss to which plaintiff has responded. The matter, having been fully briefed to the Court, is deemed ripe for disposition.

■ In considering the defendant's motion to dismiss, all the material factual allegations of the petition must be accepted as admitted. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Moreover, within this Circuit, a petition may not be dismissed "unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Johnson v. Mueller,* 415 F.2d 354, 355 (4th Cir. 1969), citing *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). See also *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

■ The defendant contends, first, that the Court lacks jurisdiction over the subject matter of the instant action. Fed.R.Civ.P., Rule 12(b)(1). The plaintiff has alleged that the defendant's actions and policies are in violation of federal law, 42 U.S.C. §§ 2000e–5(b), 2000e–8(c), 5 U.S.C. § 552(b), 18 U.S.C. § 1905, and that the matter in controversy exceeds the sum of $10,000, exclusive of interest and costs. Since the claims arise under laws of the United States, jurisdiction is attained by virtue of 28 U.S.C. § 1331. *E. g., Burroughs Corporation v. Schlesinger, et al.,* 403 F.Supp. 633 (E.D.Va.1975). Defendant's assertion that the sections of federal law cited by plaintiff are not applicable to the instant case does not defeat jurisdiction, but rather contests whether the plaintiff has stated a cause of action. See *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

■ Additionally, plaintiff has alleged jurisdiction under 28 U.S.C. § 1337 which vests jurisdiction in this Court in proceedings *"arising under any* act of Congress regulating commerce . . . *"* (Emphasis added). One of the federal acts allegedly violated by the defendant is Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.,* and the Commerce Clause has been consistently accepted as one of the Act's primary constitutional justifications. *E. g., Communication Workers of America, AFL–CIO v. American Tele-*

---

4. *Confidentiality.* Neither a charge, nor information obtained pursuant to § 709(a) of Title VII nor information obtained from the records required to be kept or reports required to be filed pursuant to §§ 709(c) and (d) of said Title shall be made matters of public information by the Commission, prior to the institution of any proceedings under this Title involving such charge or information. This provision does not apply to such earlier disclosures to the charging party, the respondent, witnesses, and representatives of interested federal, state, and local agencies as may be appropriate or necessary to the carrying out of the Commission's functions under the Title, nor to the publication of data derived from such information in a form which does not reveal the identity of the charging party, respondent, or persons supplying the information.

Section 1601.20 of the Commission's procedural regulations, 29 C.F.R. § 1601.20, was published in 36 Fed.Reg. 20,600 on October 27, 1971.

5. Special disclosure rules apply to the case filed for charging parties, aggrieved persons on whose behalf a charge has been filed, and entities against whom charges have been filed. The special disclosure rules are available in the public reading areas of the Commission. Under §§ 706 and 709, case files involved in the administrative process of the Commission are not available to the public.

Section 1610.17(d) of the Commission's procedural regulations was published at 40 Fed. Reg. 8,171 on February 26, 1975.

6. Section 83 of the Commission's Compliance Manual was published on May 21, 1975. See Appendix A.

*phone and Telegraph Company, Long Lines Department,* 513 F.2d 1024, 1031 (2d Cir. 1975). Thus, jurisdiction over those claims based on alleged violations of Title VII is alternatively conferred upon the Court under § 1337.

■ Finally, it is alleged that jurisdiction over this action is conferred on the Court by § 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701–706, which, as an independent source of jurisdiction, empowers district courts to review much agency action regardless of the amount in controversy. While judicial holdings on this subject are conflicting,[7] in the case of *Deering Milliken, Inc. v. Johnston,* 295 F.2d 856 (4th Cir. 1961), Judge Haynsworth, speaking for the United States Court of Appeals for the Fourth Circuit, held that § 10(e) of the Administrative Procedure Act gives federal courts jurisdiction to enforce the Act's requirement that agency determinations proceed with reasonable expedition. The holding was premised, however, on the fact that no alternative means were available for the plaintiff to enforce the Act's directives. Yet, it seems to stand for the proposition that the Act, without more, can provide a basis for jurisdiction. See also *Littell v. Morton,* 445 F.2d 1207, 1210 (4th Cir. 1971); *McEachern v. United States,* 321 F.2d 31, 33 (4th Cir. 1963). The Supreme Court has not squarely ruled on the issue but recent decisions lend significant support to the theory that administrative agency decisions are liberally reviewable in the federal courts. *E. g., Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 402, 28 L.Ed.2d 136 (1971); *Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The Court concludes therefore that the Administrative Procedure Act authorizes district courts to entertain suits challenging the validity of agency action without regard to the amount in controversy, or other requirements contained in alternative jurisdictional statutes. See *Etheridge v. Schlesinger,* 362 F.Supp. 198 (E.D.Va.1973). *But see International Federation of Professional and Technical Engineers, Local No. 1 v. Williams,* 389 F.Supp. 287 (E.D.Va.1974), aff'd without opinion, 510 F.2d 966 (4th Cir. 1975).[8]

The defendant contends further that the Commission is not a proper party, and for reasons which follow, the Court is in agreement with respect to some of the causes. The defendant's argument is premised upon the case of *Blackmar v. Guerre,* 342 U.S. 512, 515, 72 S.Ct. 410, 412, 96 L.Ed. 534 (1952); the Supreme Court noted that "[w]hen Congress authorized one of its agencies to be sued *eo nomine,* it does so in explicit language, or impliedly because the agency is the offspring of such a suable entity." The Court continued, dismissing in that case the Civil Service Commission:

"Since the Civil Service Commission is not a corporate entity which Congress has authorized to be sued, a suit involving the action of the Commission generally must be brought against the individual commissioners as members of the United States Civil Service Commission. No such suit was brought here, and no service was had upon the individuals compris-

7. *Compare Charles River Park "A", Inc. v. Department of Housing and Urban Development,* 171 U.S.App.D.C. 286, 519 F.2d 935 (1975); *Rothman v. Hospital Service of Southern California,* 510 F.2d 956 (9th Cir. 1975); *Bradley v. Weinberger,* 483 F.2d 410 (1st Cir. 1973); *State Highway Commission of Missouri v. Volpe,* 479 F.2d 1099 (8th Cir. 1973); *Etheridge v. Schlesinger,* 362 F.Supp. 198 (E.D.Va.1973) *with Bramblett v. Desobry,* 490 F.2d 405 (6th Cir. 1974); *Grant v. Hogan,* 505 F.2d 1220 (3d Cir. 1974); *Arizona State Department of Public Welfare v. Department of Health, Education and Welfare,* 449 F.2d 456 (9th Cir. 1971); *Twin Cities Chippewa Tribal Council v. Minne-*

*sota Chippewa Tribe,* 370 F.2d 529 (8th Cir. 1967); *Ove Gustavsson Contracting Co. v. Floete,* 278 F.2d 912 (2d Cir. 1960); *International Federation of Professional and Technical Engineers, Local No. 1 v. Williams,* 389 F.Supp. 287 (E.D.Va.1974), aff'd without opinion, 510 F.2d 966 (4th Cir. 1975).

8. Since the United States Court of Appeals for the Fourth Circuit could have affirmed the case on the basis of lack of exhaustion rather than on this issue, the summary affirmance cannot be given weight on the question herein involved.

ing the Civil Service Commission. Therefore, neither the individuals comprising the Civil Service Commission nor the Commission as a suable entity was before the District Court." *Id.*

Additionally, the Court rejected the contention that a forerunner of the present Administrative Procedure Act (APA) specifically authorized the suit against the Commission as an entity. *See also Fort Worth National Corporation v. Federal Savings and Loan Insurance Corporation,* 469 F.2d 47, 54 (5th Cir. 1972).

 Section 1905 of Title 18 of the United States Code and § 709(e) of Title VII, 42 U.S.C. § 2000e–8(e), are criminal statutes directed to *officers or employees* of the "United States or any department or agency thereof or of the Commission." Any civil action filed alleging a violation of these sections, even assuming that they state a cause of action, must be directed to the parties referred to therein. Plaintiff having failed to so do, its allegation in this regard must be dismissed, pending an appropriate and timely motion to join individual EEOC commissioners as parties to the instant suit.

 The Court is satisfied, however, that two of the federal provisions invoked by the plaintiff authorize suit against the Commission on a selective basis. The Freedom of Information Act grants to the district courts "jurisdiction to enjoin *the agency* from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). (Emphasis added). Since the agency is expressly subject to suit on Freedom of Information Act violations, to the extent that the plaintiffs state a cause of action under the prescriptions of the Freedom of Information Act, as reviewable under the procedures of the APA, the Commission is a proper party to the suit. Moreover, the penal provisions of § 706(b) of Title VII, 42 U.S.C. § 2000e–5(b) provide for sanctions against the Commission as an entity. Section 706(b) provides, in part, that "[C]harges shall not be made

public by the Commission." Criminal sanctions are provided for "[A]ny person who makes public information in violation of this subsection . . . ." *Ibid.* "Person" is defined in Title VII as including "one or more individuals, governments, [or] governmental agencies. . . ."[9] 42 U.S.C. § 2000e(a). To the extent therefore that the plaintiff states a cause of action under this Title VII provision, the Commission may be sued *eo nomine.* The quest, therefore, is to determine whether the plaintiff has stated a valid cause of action under these statutes. See Fed.R.Civ.P. 12(b)(6).

 Although § 706(b) is a criminal statute, it may be invoked civilly to effectuate its congressional purpose by those that are in its scope of protection. *See Wyandotte Company v. United States,* 389 U.S. 191, 202, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967); *J. I. Case Company v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). The section is intended to supplement the Commission's broad investigatory powers by insuring that information sought and received by the Commission will not be disclosed to the embarrassment, either financially or politically, of the target employer. It encourages the employer to cooperate, and justifies, in part, the broad grants of investigatory powers given the Commission. Those parties directly injured by its violation will be the target employers. Accordingly, the Court concludes that an affected employer, in alleging a violation of § 706(b), may thereby state a valid cause of action against the Commission based on alleged violations of that provision.

Section 706(b) prescribes that "[N]othing said or done during and as a part of such informal endeavors [conference, conciliation, and persuasion] may be made public by the Commission." The language is unequivocal and, contrary to the Commission's regulations, does not appear to contain exceptions for disclosures to the charging party, or to witnesses and representatives of interested federal, state and local agencies made *before* the institution of judicial pro-

---

**9.** See footnote 1, *supra.*

ceedings. But regrettably, the question has neither been briefed or argued and the Court will defer ruling on the matter to give the parties an opportunity to address themselves to that issue. *But see H. Kessler & Co. v. Equal Employment Opportunity Commission,* 472 F.2d 1147 (5th Cir. 1973).

 The Freedom of Information Act, however, cannot be said to create a cause of action to prevent disclosure of government information. The Act was intended to promote, not to inhibit the disclosure of government agency documents to the public. It is a revision of § 3 of the Administrative Procedure Act, 5 U.S.C. § 1002 (1964). The basic reason for its enactment was the congressional concern that "[a]lthough the theory of an informed electorate is vital to the proper operation of a democracy there is nowhere in our present law a statute which affirmatively provides for that information." S.Rep.No. 813, 89th Cong., 1st Sess. 3 (1965). Congress concluded that the former public information section was "full of loopholes which allow agencies to deny legitimate information to the public." The present statute directs that public information and records shall be made available "to the public" and "to any person." 5 U.S.C. § 555(a) and (c). To construe the Act as preventing the government from disclosing information within one of the nine exemptions to the mandatory disclosure provisions, 5 U.S.C. § 552(b)(1-9), would be inconsistent with the congressional purpose in enacting the statute. The history and subsequent interpretation of the Act make clear the proposition that the exemptions were permissive and not mandatory; the government may, in the exercise of its discretion, release documents that it may be authorized to withhold under the exemptions to the Act. The Senate Committee report on the 1974 amendments to the Act stated:

> Congress did not intend the exemptions in the FOIA to be used either to prohibit information, or to justify automatic withholding of information. Rather, they are only *permissive*. They mark the outer limits of information that *may* be withheld where the agency makes a specific affirmative determination that the public interest and the specific circumstances present dictate—as well as the intent of the exemption relied on allows—that the information *should be* withheld . . . A number of agencies have by regulation adopted this position that, notwithstanding applicability of FOIA exemptions, records must go disclosed where there is no compelling reason for withholding . . . This approach was clearly intended by Congress in passing the FOIA.

S.Rep.No.93–854, 93d Cong., 2d Sess. 6 (1974) (Emphasis in original).

*See also* S.Rep.No.94–66, 94th Cong., 1st Sess. 38–39 (1975). H.R.Rep.No.93–876, 93d Cong., 2d Sess. 4 (1974), U.S.Code Cong. & Admin.News 1974, p. 6267. H.R.Rep.No. 92–1419, 92d Cong., 2d Sess. 14 (1972); *Sears, Roebuck and Co. v. General Services Administration,* 402 F.Supp. 378, 381–82 (D.D.C.1975). The Attorney General's interpretation of the Act is similar:

> Agencies should keep in mind that in some instances the public interest may best be served by disclosing, to the extent permitted by other laws, documents which they would be authorized to withhold under the exemption.

Attorney General's Memorandum on the Public Information Section of the Administrative Procedure Act (June 1967) pp. 2–3. Recognition that the government may choose to publish information falling within the exemptions was specifically noted by the Supreme Court in *Environmental Protection Agency v. Mink,* 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973):

> Subsection (b) [the exemption] is part of this scheme [to permit access to official information] and represents the congressional determination of the types of information *that the Executive Branch must have the option to keep confidential, if it so chooses.* (Emphasis added).

*See also Moore-McCormick Lines, Inc. v. I. T. O. Corp. of Baltimore,* 508 F.2d 945, 950 (4th Cir. 1974); *Charles River Park "A" Inc., et al. v. Department of Housing and*

*Urban Development,* 171 U.S.App.D.C. 286, 519 F.2d 935 (1975); *Rural Housing Alliance v. Department of Agriculture,* 162 U.S. App.D.C. 122, 498 F.2d 73, 82 (1974). *But cf. Westinghouse Electric Corporation v. Schlesinger,* 392 F.Supp. 1246 (E.D.Va. 1974). It is the Court's view that Congress never intended for the Freedom of Information Act to be interposed as a bar to the government's voluntary disclosure of information. It follows therefore that since the Act's exemptions are permissive, and not mandatory, even if an exemption is applicable, the agency cannot be said to have violated the literal provisions of the Act in determining what information should be disclosed.

While the Act can be used to guide the Court in determining whether the agency has violated the procedures and standards outlined by the Administrative Procedure Act, the Freedom of Information Act cannot itself support a cause of action for nondisclosure—the Act's provisions are not violated by nondisclosure. In light of the fact that the Supreme Court has expressly held that the Administrative Procedure Act does not authorize suits against federal agencies *eo nomine,* those claims based on the Administrative Procedure Act must be dismissed, pending an appropriate and timely amendment to the pleadings adding EEOC commissioners or employees as parties.

Defendant contends additionally that the doctrine of sovereign immunity bars the instant suit. Since the Commission is an agency of the federal government, Congress must have waived its right to sovereign immunity in order that suit against the Commission be cognizable in this Court. *See Blackmar v. Guerre, supra; McEachern v. United States,* 321 F.2d 31 (4th Cir. 1970). *Cf. Hawaii v. Gordan,* 373 U.S. 57, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963); *Dugan v. Rank,* 372 U.S. 609 (1963); *Littell v. Morton,* 445 F.2d 1207, 1213 (4th Cir. 1971). The only remaining allegation concerns a violation of § 706(b) of Title VII. In enacting the provisions of Title VII which permit criminal charges to be brought against the Commission, Congress has clearly waived the Commission's claim to sovereign immunity with respect to such allegations, and since the criminal provision may be invoked civilly to effectuate congressional policies, the Court concludes that sovereign immunity has no applicability to a civil suit brought under said provisions.

Finally, defendant contends that there is no case or controversy in the instant suit. As heretofore noted, Associated is contending that the Commission has violated, and is threatening to violate, § 709(b) of Title VII, by promulgating "special disclosure rules" in § 83 of its field manual pursuant to its regulations authorizing the disclosure of case files containing confidential information supplied by charged employers, and by specifically advising Horne's in the instant matter that such procedures would be followed. Defendant's position is that the Commission has not received the information sought, nor, therefore, disclosed any such information to anyone objectionable. Even assuming that plaintiff's arguments on the merits are well taken, it asserts that no harm has been effected. Relying on *Toilet Goods Association v. Gardner,* 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967), *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) and *Gardner v. Toilet Goods Association,* 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967), the defendant contends that a pre-enforcement challenge to agency regulations, as sought in the instant case, is premature. While *Abbott Laboratories, supra,* is not directly applicable to the instant case by reason of the fact that the enforcement mechanism of the Administrative Procedure Act is not in issue, for the only surviving claim deals with alleged violations or threatened violations of the criminal provisions of Title VII, the principles of *Abbott Laboratories* provide guidance in deciding the ripeness of a civil action based on allegedly defective administrative regulations. As in *Abbott Laboratories,* the issue here is a "purely legal one" and final agency action has been manifest. The question boils down to whether the Com-

mission's regulations and policies exceed its authority under Title VII, thereby constituting a violation of statutory law. The regulations and policies have been finalized and it was the clear intention of the Commission to apply the policies to any information tendered by the plaintiff. As in *Abbott Laboratories*, the plaintiff will suffer considerable hardship if the Court withholds consideration of the case. Associated has been placed in an untenable position. If it turns over the information, the alleged harm can be perpetrated by the Commission's disclosing the information, as it indicates it will, and after-the-fact relief may well be inadequate. The information once dispersed cannot be retrieved from the consciousness of the recipients. On the other hand, it may withhold the information, until ordered, perhaps, to release it by the federal court in Pittsburgh, and refuse to cooperate with the agency thus shutting off the possibility that it can, through conciliation efforts, demonstrate that it has not been in violation of the law. The importance of the Commission's conciliatory function has been recently underscored by the United States Court of Appeals for this Circuit, *Patterson v. American Tobacco Company*, 535 F.2d 257 (4th Cir. 1976), and the plaintiff has been deprived of the process's benefits. It is alleged that uninvestigated charges will accumulate, the potential for costly litigation will mount, and commercial goodwill will decline. For those reasons, the Court concludes that the instant case is susceptible of pre-enforcement review.

An appropriate order will issue.

## APPENDIX A

## SECTION 83

## DISCLOSURE OF INFORMATION IN CASE FILES

83.1 *General*—Section 709(e) of Title VII makes it unlawful for any employee of the Commission to make public information obtained by the Commission pursuant to its general authority to investigate charges of discrimination prior to the institution of any proceeding under Title VII. The Fifth Circuit Court of Appeals has held (*Kessler v. EEOC*, 472 F.2d 1147 (5th Cir. 1973) that granting access to such information to charging parties or their attorneys prior to the institution of a proceeding under Title VII is not "making public" within the meaning of that term as used in § 709(e).

83.2 *Exceptions*

(a) *Disclosure of Information In Response to Subpoenas, Demands or Order of Courts or Other Authorities*. The procedures and policies of this section do not apply to disclosures of information from case files in response to subpoenas, demands or orders of courts or other authorities. The procedures in subpart B of the Commission's Regulations on Availability of Records (29 CFR 1610.30 through 1610.36) are to be followed in these circumstances.

(b) *Disclosure of Information When the Commission is a Party to Litigation*—Once a case file has been referred to Office of General Counsel to be used in litigation to which the Commission is a party or in any other case where the Commission is a party to litigation, the Office of General Counsel will control disclosures of information and all persons requesting disclosure from District Offices or National Programs Division (NPD) will be referred to the Office of General Counsel as provided in section 1610.34 of the Commission Regulations.

(c) *Disclosures of Information in Case Files to Representatives of Interested Federal, State or Local Authorities*—The procedures and policies of this section do not apply to disclosures of information in case files to representatives of interested Federal, State or Local agencies. Such disclosures are to be made as appropriate and necessary to carrying out the Commission's responsibilities under the law in accordance with Section 709(b) of Title VII and Section 1601.20 of the Commission's Procedural Regulations.

83.3 *Conditions Precedent to Disclosure*—Information in case files may be disclosed on request to the persons indicted in 83.5 under the following conditions:

824

(a) *In Connection with Pending or Contemplated Litigation*—Information in case files may be disclosed provided that the request is made for the purpose of reviewing information in the case file in connection with pending or contemplated litigation. Access to the information will not be granted prior to the expiration of the 180-day period prescribed at Section 706(f)(1) of Title VII except when the charge has been dismissed or the aggrieved or charging party demonstrates a compelling need for access prior to the expiration of the 180-day period; and

(b) *Persons Requesting Disclosure Must Agree Not to Make the Information Public*—Information in case files may be disclosed only on the condition that the persons requesting disclosure agree in writing not to make the information obtained public except in the normal course of a civil action or other proceeding instituted under Title VII.

83.4 *Use of EEOC Form 167, Agreement of Nondisclosure (See Exhibit 83–A)*—Each person to whom disclosure is made will sign a separate EEOC Form 167, Agreement of Nondisclosure, check the appropriate block to indicate identification and provide a complete address and telephone number. Completion of EEOC Form 167 will be accepted as evidence that the conditions in 83.3 are agreed to by the person requesting disclosure. The Commission representative who signs the EEOC Form 167 on behalf of the Commission will normally be the District Counsel, District Director or other responsible professional employee in a supervisory position. Retain the original in the case file. A copy may be provided to the person requesting disclosure, if requested.

83.5 *Persons to Whom Information In Case Files May Be Disclosed*—Information in case files may be disclosed on request, after complying with the expunction requirements discussed in 83.6, to *only* the following persons:

(a) Charging Parties and their attorneys (except as otherwise provided in 83.5(c) below):

(b) Aggrieved persons in case files involving Commissioner Charges and their attorneys provided that such persons have been notified of their status as aggrieved persons pursuant to Section 1601.25(c) of the Commission's Procedural Regulations;

(c) Persons or organizations filing on behalf of an aggrieved person, provided that the aggrieved person has given written authorization to the person who filed on his or her behalf to act as the aggrieved person's agent for this purpose and their attorneys;

(d) Employees of Commission funded groups such as the Mexican-American Legal Defense and Education Fund and Lawyer's Committee for Civil Rights Under Law for the purpose of reviewing information in case files to determine the appropriateness of referral to private attorneys as a service to charging parties, provided that the conditions in 83.4 and 83.6 have been met and that the Commission funded group is reviewing the information at the request of the charging party;

(e) Respondents and their attorneys, provided that the charging party or aggrieved person has filed suit under Title VII.